FILED
United States Court of Appeals
Tenth Circuit

February 22, 2012

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

CASIMIRO LOYA-RODRIGUEZ,
a/k/a Andres Portillo-Loya,

Defendant - Appellant.

No. 11-1051

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. NO. 1:09-CR-00348-PAB-1)**

---

Veronica S. Rossman, Assistant Federal Public Defender, (Raymond P. Moore,
Federal Public Defender, with her on the briefs), Denver, Colorado, for Defendant
- Appellant.

John M. Canedy, Special Assistant United States Attorney, (John F. Walsh,
United States Attorney, with him on the brief), Denver, Colorado, for Plaintiff -
Appellee.

---

Before **MURPHY**, **HARTZ**, and **TYMKOVICH**, Circuit Judges.

---

**HARTZ**, Circuit Judge.

---

Defendant Casimiro Loya-Rodriguez appeals his conviction and sentence in

the United States District Court for the District of Colorado for the offense of

illegal reentry after deportation subsequent to an aggravated felony conviction. *See* 8 U.S.C. § 1326(a), (b)(2). He contends that the district court denied his Sixth Amendment right to represent himself both at trial and at sentencing. We affirm Defendant's conviction because he failed to make a clear and unequivocal request to represent himself at trial. But we remand to the district court to vacate his sentence and then resentence him because he did make such a request to represent himself at sentencing.

## I.     BACKGROUND

The proceedings against Defendant began unremarkably. At his initial appearance on October 21, 2009, the magistrate judge appointed counsel to represent him. After the interpreter was sworn and Defendant was advised of his rights, the charge against him, and the potential penalties, the relevant discussion was brief:

> The Court: Sir, do you understand the charges that are pending against you and the penalties you face?
> [Defendant]: Yes.
> The Court: All right, I want to talk to you about whether or not you have an attorney. Do you have an attorney to represent you in this case?
> [Defendant]: No.
> The Court: *Would you like me to consider appointing an attorney to represent you?*
> [Defendant]: *If possible, yes, please.*
> The Court: All right. I've looked at your financial affidavit and although it is printed in Spanish, I can tell by what's marked that you do qualify for appointed counsel. Is there any conflict with the public defender in this case?

-2-

[Attorney from public defender's office]: There is not, Your Honor.

The Court: All right. I'm going to appoint the Office of the Public Defender to represent you, sir, and they have a number of lawyers on staff there and so I'm not sure who exactly it will be, but one of those lawyers will come and see you within the next few days.

Supp. R., Vol. 1 at 7–8 (emphasis added). On November 13 Defendant's attorney, Janine Yunker, filed a notice that agreement had been reached with the government and requested vacation of the December trial date. The district court set a change-of-plea hearing for December 18.

But then difficulties arose. On November 30, 2009, Ms. Yunker filed a motion to determine Defendant's competency. She stated that she had reasonable cause to believe that Defendant was suffering from a mental disease and requested a psychological evaluation. The district court ordered one and Defendant was evaluated at the federal detention facility where he was being held. According to the report by Dr. Jeremiah Dwyer dated January 12, 2010, Defendant initially cooperated and engaged in conversation but once he was told that the evaluation process would begin, he refused to participate, "indicating that no one helped him in the past, so now he would not help the evaluators." R., Vol. 1 at 48. The report also noted, however, that the staff at the facility reported that Defendant had been cooperative and responsive on matters of medical care and when he wanted something. The report concluded that although Defendant's behavior

could stem from cognitive deficits, it was also possible that Defendant was voluntarily refusing to cooperate.

At a status conference on January 14, Ms. Yunker told the district court of her inability to communicate with her client: "I have advised [Defendant] obviously of his ability to testify at a competency hearing and call witnesses, but I had no response from him, which has been the pattern in my representation of him." *Id.*, Vol. 3 pt. 1 at 18. The court set the matter for a competency hearing on January 20.

> At the hearing the following colloquy took place:
>
> The Court: Ms. Yunker, did Mr. Loya-Rodriguez wish to testify at the hearing?
> Ms. Yunker: I have no idea, Your Honor. I have communicated that to him when we met on the 14th. He will not talk to me. He will not speak to me. The best I can get is cuss words at me, so I have no communication with him.
> The Court: Mr. Loya-Rodriguez, do you wish to testify at this competency hearing?
> The Defendant: Go fuck yourself.

*Id.* at 30–31. Defendant was similarly disrespectful of his interpreter, who at one point reported to the court that Defendant "has indicated that I should be quiet or otherwise he is going to do something." *Id.* at 34. The district court found that "[b]ased upon the evidence that has been submitted through the report of [the psychologist], it appears that if anything, [Defendant] is competent. He just simply chooses not to cooperate." *Id.* at 29. And it ruled that "the standard of incompetency has not been shown by a preponderance of the evidence." *Id.* at 39.

The next day Ms. Yunker filed a motion to withdraw. It revealed that at her first meeting with Defendant, he expressed his belief that the public defender's office was conspiring with the government; thereafter, "there [was] no communication between the lawyer and the client, reasonable or otherwise." *Id.*, Vol. 1 at 31. The motion requested appointment of private counsel.

Ms. Yunker met again with Defendant on January 27; but the meeting simply led her to file a motion requesting another psychological examination and competency hearing. According to the motion, the meeting had been as unfruitful as the first one. Defendant initially refused to go into the visiting room of the detention center to see counsel; and when he finally did meet her, he expressed again his belief that she was conspiring with others to keep him in prison.

In a February 2 order the district court denied the motion to withdraw. It said:

> [A]lthough communications between the defendant and his attorney have completely broken down, which would ordinarily provide proper grounds for withdrawal, the fact that this breakdown appears to be a voluntary decision of the defendant creates an exception to the normal rule.

*Id.* at 50 (citation omitted). The following week the court held a hearing on the motion for psychological examination and found, based on defense counsel's assertions, that there was reasonable cause to believe that Defendant was suffering from mental illness rendering him incompetent. On March 5 it ordered an evaluation at a federal medical center.

On April 30 Ms. Yunker withdrew because of her retirement, and Edward Pluss, also from the public defender's office, replaced her. The district court conducted a competency hearing on June 29 to consider the medical-center evaluation report. The report stated that Defendant had refused to participate in several components of the evaluation. Nevertheless, it noted that Defendant had the ability to interact appropriately with medical-center staff at times and concluded that he was competent to stand trial. Mr. Pluss also reported Defendant's failure to interact, but argued that this behavior showed incompetence to stand trial. He said: "I have now three times attempted to communicate with [Defendant] in an attorney/client fashion on an attorney/client basis in order to represent him as an attorney. He has not responded to me any of the three times . . . ." *Id.*, Vol. 3 pt. 1 at 62. Despite defense counsel's statement, the district court ruled that the second psychological evaluation showed Defendant to be competent to stand trial. It stated: "The fact that he has chosen not to communicate with Mr. Pluss is simply something that [Defendant] has decided to do on his own. It's not a product of any type of mental disease or defect." *Id.* at 70.

Two days later, on July 1, Mr. Pluss moved to withdraw and, for the first time, requested that the district court allow Defendant to proceed pro se. The motion reiterated counsel's concern that his three requests to meet with Defendant had been rebuffed, and asserted that Defendant's actions communicated a clear

and unequivocal request to represent himself. Stating that it was unable to infer from the circumstances that Defendant wished to represent himself, the court promptly denied the motion. It also noted that "[s]elf-representation would entail communicating with the court and with government counsel, which, for the same reasons that defendant is apparently not talking to his own attorney, the defendant is probably unwilling to do." *Id.*, Vol. 1 at 84.

On July 24 Defendant submitted a letter to the district court. The letter was written in Spanish but was translated for the court as follows:

> I need you to do me a favor.
> I want to communicate, if I can, personally and verbally, during the following hearings, with the Court, and in front of the Judge.
> I want to communicate without the help of an attorney.
> Only with the help of an interpreter.
>
> Because the attorney or public defender.
> I feel that he doesn't help me at all.
> I feel that he is a nuisance to me.
> Because he doesn't help me but.
> He doesn't let me help myself either.
> I want *that public defender* to be.
> Out of my range of sight and hearing.
> I await a response.

*Id.* at 174 (emphasis added). On August 2 his attorney, relying on Defendant's letter, filed a renewed motion to withdraw. These matters were considered at a pretrial hearing on August 3. At the outset the district court offered Defendant an opportunity to address the court about his letter, saying:

> The first issue we will take up is the fact that Mr. Loya-Rodriguez filed a note to the Court. This is Docket No. 64. It was translated

into English. And his request is that he wishes to address the Court without the help of an attorney and that he has some complaints about his attorney stating that, "He doesn't help me, but he doesn't let me help myself either. I want the public defender to be out of my range of sight and hearing."

Mr. Loya-Rodriguez, now is your opportunity to address the Court, if you wish, pursuant to your request.

*Id.*, Vol. 3 pt. 1 at 77. The transcript of the proceeding does not indicate how long the court waited for a response, but it continues:

The record should reflect that Mr. Loya-Rodriguez is not responding in any way, but rather sitting with his head in his left hand. I have found at other hearings it has been noted by the Bureau of Prisons, specifically the Federal Medical Center, that Mr. Loya-Rodriguez is able to communicate in English and also he has a history of refusing to respond or to cooperate with courts or defense attorneys.

*Id.*

The district court then turned to defense counsel's motion to withdraw. Mr. Pluss told the court that he had met with Defendant again but failed in his attempt to talk to Defendant about the case, that he had concerns about Defendant's competency, and that Defendant should be allowed to proceed pro se. The government countered that Defendant still had not invoked his right to self-representation:

If the defendant is going to be obstinate, if he is going to refuse to address the Court, if he is going to refuse to answer the Court's questions, the government fails to understand how the Court could properly advise the defendant and properly receive a waiver. And therefore, we believe that there would be error if the defendant were to proceed pro se when he is now refusing to have any communication with the Court and explain his rationale.

*Id.* at 81.

The district court denied the motion. It reasoned that Defendant's letter indicated that "he wants to be out of sight and hearing of his attorney, but doesn't anywhere request that he represent himself," *id.* at 83; and "given [Defendant's] refusal to communicate with the Court, it would be extremely difficult to establish whether he was knowingly and voluntarily wishing to represent himself." *Id.*

Later that day defense counsel filed a motion to continue trial so that he could hire an independent expert to conduct a psychological examination. In support of his belief that Defendant was mentally ill, he referred to the above-mentioned meeting when he was unable to direct Defendant's attention to the pending trial. On August 4 the district court denied the motion, explaining that the psychological examinations indicated that Defendant's behavior was part of a general hostility toward attorneys.

Trial began on August 9. Defense counsel orally renewed his motion to continue, but the district court denied the request because Defendant had already been extensively evaluated. The jury returned its verdict on August 10.

On December 21, while awaiting sentencing, Defendant submitted another letter to the district court (this time, handwritten in full in both Spanish and English). It said:

> I'm writing this letter to let you know about my problem with my attorneys, my first one and my second one. I don't even remember their names, because I hardly talk to them, I been thinking

that the reason why they don't come to talk to me or see me is because they don't understand me, when I want to say something, but I understand them, I notice that I tell them something and they inform the court something different than what I'm saying[.]

According to what I have read on my discovery paperwork about my case everything I read is not true is nothing but lies. So I don't want to continue my case with the help of this people that instead of helping me theyre getting me deeper into trouble, I want this attorneys out of my life out of my case, out of my way because I don't think they're helping me at all.

*All I'm asking you is to let me represent myself I don't need no attorney, or legal representation*[.]

*Id.*, Vol. 1 at 281 (emphasis added). The court construed the letter as a motion for an order to proceed pro se and immediately denied the request in a minute order without explanation.

Defendant again raised the issue at his sentencing hearing on January 14, 2011, even before the district court called the case. The proceedings began as follows:

The Court: The matter before the Court is United States of [sic] versus Casimiro—

The Defendant: I sent a bunch of fucking letters and he still fucking here? I sent letters to this fucking guy and fucking everybody and nobody listens to fucking me. Everybody is fucking with me. He wants to fuck with me.

The Court: You are going to speak when you are spoken to and I didn't address you yet. You can speak when I ask you to, but otherwise you will keep quiet.

The Defendant: I sent a fucking bunch of letters and you didn't fucking listen to me.

The Court: We have to call the case first, Mr. Loya-Rodriguez. So until that time don't say anything.

The Defendant: Fuck you, mother fucker.

The Court: United States of America versus Casimiro Loya-Rodriguez, Criminal Case No. 09-CR-348. Mr. Canedy appears on

-10-

behalf of the United States. Good morning. Mr. Pluss appears on behalf of Mr. Casimiro Loya-Rodriguez. Good morning to you.

Mr. Pluss: Good morning, Your Honor.

The Court: The defendant appears today in custody. Mr. Loya-Rodriguez, do you request the help of an interpreter today?

The Defendant: If you can tell me in Spanish and if you can tell them if they didn't understand what I told them that I don't want this asshole here.

The Court: Mr. Loya-Rodriguez, Mr. Pluss is going to represent you. However—

The Defendant: *I don't need fucking nobody to represent me. I don't need no mother fucking lawyer to represent me.*

The Court: You Mr. Loya-Rodriguez, listen to me.

The Defendant: What you charging me with? What am I charged with?

The Court: Mr. Loya-Rodriguez, here is the thing. Here is what we are going to do. You don't appear to be in a very good mood today. We are going to continue the sentencing hearing. When we come back—we are going to set it for next week. When we come back, if you are disruptive, I am going to deem you to have waived your right to be present for sentencing. You are going to listen to the sentencing hearing in the cell. So we are going to set this for next week. At that sentencing hearing next week you have the right to address the Court regarding the sentence in this case. Mr. Pluss is going to speak if he wishes to as well, but you have the right to say whatever you want regarding the sentence.

The Defendant: All he got is a bunch of mother fucking letters, the fucking papers. He have all the fucking paperwork. It's nothing but fucking lies.

The Court: Mr. Loya-Rodriguez, did you hear what I said? So you are being disruptive right now. We are going to come back next week. Next week you have got to behave yourself.

The Defendant: You mother fucking—you bring me in front of the fucking trial when I was at the trial and he don't even tell me that where I am going to be the next day, so fucking I still mad at him for that.

The Court: We will reschedule this matter.

The Defendant: You still owe me that, mother fucker.

The Court: You can remove him from the courtroom.

The Defendant: So now go fuck yourself.

*Id.*, Vol. 3 pt. 2 at 428–430 (emphasis added).  Defense counsel, in a more seemly

manner, then pursued the same issue:

> Mr. Pluss:  Your Honor, I do wish to raise something, however.
> The Court:  Let's wait until Mr. Loya-Rodriguez is removed.
> The Defendant:  Fuck yourself, mother fucking faggot, mother fucker, idiot mother fuckers.
> (The defendant was removed from the courtroom)
> Mr. Pluss:  Your Honor, while I have always questioned Mr. Loya-Rodriguez's competency, this Court has found him to be competent.  I know that he filed with this Court a motion requesting that I not be his lawyer and that he proceed by himself.  He has again to both me, as well as I think by his actions today which were really directed towards me, he has made it very clear he does not wish me to represent him and he wishes to represent himself.
>
> I think he has—well, I don't know that it's necessarily in his best interests.  I believe that he is maybe unfortunately entitled to that right if he is competent and I think it's pretty much an absolute right.  And so consequently, Your Honor, given his clear directive that he wishes to represent himself, I think I might have really no alternative but again move to withdraw from his representation.

*Id.* at 430–31.  The court responded:

> That request is denied.  The Court has ruled on similar requests by Mr. Pluss and namely I am looking at one order that the Court issued on July 2nd of last year.  And while he has indicated he doesn't want to be represented by you or have you present, he hasn't indicated that he wants to represent himself.  I think it would be decidedly against his best interests for him to represent himself, especially since if he is disruptive, as I told him, I am going to exclude him from the courtroom having deemed his presence waived in which case if he didn't have a lawyer, we wouldn't be able to proceed at all.
>
> I have in the past found Mr. Loya-Rodriguez to be a person who has—not just me, I base this on evaluations of him both by Dr. Dwyer and also by the Federal Medical Center at Butner—to have someone who does not have incompetence based on any form of mental illness, and frankly there is evidence in the record of

-12-

Mr. Loya-Rodriguez essentially being manipulative. I have every reason to believe that his behavior today is manipulative behavior; and therefore, *I don't consider his request that you not participate to be some legitimate request to represent himself*, so I will deny that.

*Id.* at 431–32 (emphasis added). The court then held the continued hearing on January 18 and sentenced Defendant to 57 months' imprisonment.

On appeal Defendant argues that the district court denied his right of self-representation because he made a clear and unequivocal request to proceed pro se before trial and before sentencing.

## II. DISCUSSION

In *Faretta v. California*, 422 U.S. 806, 807 (1975), the Supreme Court held that the Sixth Amendment affords a criminal defendant the right to proceed without counsel. It acknowledged, however, that this right "cut[s] against the grain of [the] Court's decisions holding that the Constitution requires that no accused can be convicted and imprisoned unless he has been accorded the right to the assistance of counsel," *id.* at 832, and it recognized that in most instances self-representation is inferior to representation by an attorney, *see id.* at 834. It therefore cautioned that courts must ensure that the choice of proceeding without counsel is made "knowingly and intelligently" after the defendant is "made aware of the dangers and disadvantages of self-representation." *Id.* at 835 (internal quotation marks omitted). Accordingly, we have held that a defendant can represent himself only when four conditions are satisfied:

-13-

> First, the defendant must clearly and unequivocally inform the district court of his intention to represent himself. Second, the request must be timely and not for the purpose of delay. Third, the court must conduct a comprehensive formal inquiry to ensure that the defendant's waiver of the right to counsel is knowingly and intelligently made. Finally, the defendant must be able and willing to abide by rules of procedure and courtroom protocol.

*United States v. Tucker*, 451 F.3d 1176, 1180 (10th Cir. 2006) (citations and internal quotation marks omitted). The only requirement relevant to this appeal is the first one—that the defendant "clearly and unequivocally" invoke the right to represent himself.

A district court's finding that a defendant's request for self-representation was not clear and unequivocal is a finding of fact reviewed for clear error. *See United States v. Mackovich*, 209 F.3d 1227, 1236 (10th Cir. 2000). We review de novo, however, whether a Sixth Amendment violation occurred. *See id.*

## A.    Self-Representation At Trial

Defendant contends that his right to self-representation at trial was clearly and unequivocally invoked by his attorney's motion of July 1, 2010; his consistent rejection of counsel's services; and his pretrial letter to the court. In our view, however, the district court's finding to the contrary was not clearly erroneous.

The July 1 motion based the request for pro se representation on the following:

Undersigned Counsel has on three separate occasions attempted to meet with the Defendant in order to effectively represent the Defendant. The Defendant on all three occasions refused to meet with Undersigned Counsel, refused to communicate with Undersigned Counsel or in anyway commence what would be denominated an attorney-client relationship. Because of this as well as other evidence that has occurred in this case it is apparent that the Defendant does not wish the services of an attorney, thus the Office of the Public Defender should be allowed to withdraw and the Defendant be allowed to represent himself, *pro se*.

R., Vol. 1 at 69. The motion argued that the district court "should view [Defendant's] conduct as a clear and unequivocal assertion of his intention to proceed *pro se* in these proceedings. Through the Defendant's conduct, it is obvious to undersigned counsel—as it should be obvious to this Court—that he does not wish to have the assistance of counsel." *Id.* at 70–71 (citation omitted). In denying the motion, the court wrote:

[Defendant] has never indicated an intention to represent himself. In fact, the opposite occurred. At his initial appearance, he requested that counsel be appointed for him. Nor can his conduct in refusing to speak or meet with his appointed counsel be considered an implied request to represent himself. As defense counsel acknowledges, there is a presumption against waiver of the right to counsel. [Defendant's] refusal to cooperate with his attorney is very different than him indicating a willingness to represent himself. Self-representation would entail communicating with the court and with government counsel, which, for the same reasons that defendant is apparently not talking to his own attorney, the defendant is probably unwilling to do.

*Id.* at 83–84 (citation omitted). This was a reasonable assessment of the situation. Nowhere in counsel's motion did he indicate that Defendant had expressed a desire to represent himself. On the contrary, it says that counsel had not

-15-

succeeded in communicating with Defendant. A pleading by an attorney who has not discussed the matter with his client can hardly be a clear and unequivocal invocation by the client of a desire to represent himself.

Defendant cites *United States v. McKinley*, 58 F.3d 1475, 1480–81 (10th Cir. 1995), in which we held that a motion by defense counsel unequivocally invoked the client's right to self-representation. But that case is readily distinguishable, because it was not disputed that the attorney was articulating a position communicated by his client. Indeed, the defendant had orally demanded in open court the right to represent himself. *See id.* at 1479. *McKinley* does not stand for the proposition that an attorney who has not communicated with his client can nevertheless invoke his client's right to self-representation.

Nor did Defendant's pretrial conduct amount to a waiver of his right to counsel. The refusal to communicate with counsel does not necessarily imply a desire to represent oneself. It may result from a desire for different counsel; or it may reflect a decision not to participate in the proceedings, letting counsel do what he feels he must but not deigning to acknowledge the legitimacy of what is going on. As the district court noted, Defendant might well not have been interested in self-representation because that "would entail communicating with the court and with government counsel, which, for the same reasons that defendant is apparently not talking to his own attorney, the defendant is probably

unwilling to do." R., Vol. 1 at 84. Defendant's conduct in itself did not satisfy the requirement of a clear and unequivocal request to represent himself.

Defendant relies on *United States v. Taylor*, 113 F.3d 1136 (10th Cir. 1997), for the proposition that "a refusal without good cause to proceed with able appointed counsel is a voluntary waiver." *Id.* at 1140 (internal quotation marks omitted). But the issue in *Taylor* was whether the defendant's waiver was voluntary, *see id.*, not whether the right to self-representation had been invoked in the first instance. The sentence quoted by Defendant related to whether a waiver could be said to be voluntary if the defendant's choice was only between representing himself or being stuck with incompetent counsel. *See id.* Also, Defendant's opening brief quotes *United States v. Willie*, 941 F.2d 1384, 1390 (10th Cir. 1991), for the proposition that "a defendant's 'continuous stubborn refusal to accept the services of admittedly competent and available counsel' indicates 'an implied waiver of [defendant's] right to counsel' and a desire to represent himself." Aplt. Br. at 33. But, again, the issue on appeal in that case was whether the defendant's waiver was knowing and intelligent. More importantly, Defendant's brief omits the opening words of the quoted sentence; the full sentence is:

> *[The defendant's] repeated and unequivocal assertions of his right to self-representation*, his continuous stubborn refusal to accept the services of admittedly competent and available counsel, his numerous *pro se* petitions and his clear expression that he could only

-17-

work with an attorney who shared his views on taxation constitute a valid implied waiver of his right to counsel."

*Willie*, 941 F.2d at 1390 (citation omitted) (emphasis added). *Willie* is obviously different from the case before us. Likewise, the third case relied on by Defendant, *United States v. Garey*, 540 F.3d 1253 (11th Cir. 2008), is distinguishable. The defendant in that case, unlike Defendant here, was adamant that he would not permit his appointed counsel to represent him at trial. *See id.* at 1259–62.

Finally, we address Defendant's argument that his own letter of July 24, 2010, made a clear and unequivocal request for self-representation. He focuses on the second of the following two sentences in the letter: "I want to communicate, if I can, personally and verbally, during the following hearings, with the Court, and in front of the Judge. I want to communicate without the help of an attorney." R., Vol. 1 at 174. When taken as a whole, however, the letter can fairly be read as expressing total frustration with his attorney and a desire to speak about something with the court when his attorney is "[o]ut of my range of sight and hearing." *Id.* It says nothing about communicating with the jury, nor does it explicitly request permission to appear pro se at trial. In any event, the court gave Defendant an opportunity to speak (and clarify his wishes) at the next hearing. The court mentioned that Defendant had filed a note, read aloud parts of it complaining about his attorney, and said, "Mr. Loya-Rodriguez, now is your

opportunity to address the Court, if you wish, pursuant to your request." *Id.*, Vol. 3 pt. 1 at 77. Defendant did not respond, even to say that he wanted his attorney out of the courtroom while he spoke. The district court did not clearly err in finding that given Defendant's silence in that context, he had not clearly and unequivocally invoked the right to represent himself at trial.

The district court's decisions did not violate Defendant's right of self-representation at trial.

### B.    Self-Representation At Sentencing

Defendant's second issue has more merit. He contends that the district court denied him his right of self-representation because he made a clear and unequivocal request to proceed pro se at sentencing. We agree.

In a letter delivered to the court more than a month before the sentencing hearing, Defendant wrote: "All I'm asking you is to let me represent myself[.] I don't need no attorney, or legal representation[.]" *Id.*, Vol. 1 at 281. The letter was filed on December 23, 2010, as document #93. That same day the district court entered a minute order "denying [93] Motion for Order to Proceed Pro Se." *Id.* at 284.

The matter arose again at Defendant's first sentencing hearing, at which his expletive-laden remarks included: "I don't need fucking nobody to represent me. I don't need no mother fucking lawyer to represent me." *Id.*, Vol. 3 pt. 2 at 429. Thereafter, his counsel argued that he should be permitted to proceed pro se. But

noting that it had ruled on previous similar requests, the district court (which, we should add, had displayed remarkable patience) said that Defendant "ha[d]n't indicated that he wants to represent himself" and that self-representation would be against his interest, particularly if he were disruptive and had to be removed from the courtroom. *Id.*, Vol. 3 pt. 2 at 431. It continued by saying that Defendant was not incompetent and had been manipulative in the past, and it concluded: "I have every reason to believe that his behavior today is manipulative behavior; and therefore, I don't consider his request that you not participate to be some legitimate request to represent himself, so I will deny that." *Id.* at 432.

In our view, the district court did not adequately respond to Defendant's request to represent himself at sentencing. Its expressed reasons for denying the request fell short of what was required. The foolhardiness of proceeding pro se is not a ground for denying self-representation if the defendant is adequately advised of the risks. To be sure, if a defendant wishes to proceed pro se, he "must be able and willing to abide by rules of procedure and courtroom protocol," *Tucker*, 451 F.3d at 1180 (internal quotation marks omitted); but the district court did not address that issue with Defendant or make a finding that he was incapable of proper behavior (from the trial transcript it appears that he behaved at trial). Also, a request to proceed pro se "must be timely and not for the purpose of delay," *id.*; but the court did not make a finding of untimeliness (the written request had been made a month before sentencing), nor did it explain what it

thought Defendant was seeking by being "manipulative." Finally, although the court found that Defendant had not made a "legitimate request" to proceed pro se, that finding is clearly erroneous insofar as it applies to Defendant's letter of December 21, 2010. It was a timely, unambiguous request "to let me represent myself." R., Vol. 1 at 281. The district court should have proceeded to "conduct a comprehensive formal inquiry to ensure that [Defendant's] waiver of the right to counsel [was] knowingly and intelligently made." *Tucker*, 451 F.3d at 1180 (internal quotation marks omitted). Accordingly, we remand for further proceedings to guarantee that Defendant's constitutional right to represent himself at sentencing is not infringed. Counsel should continue to represent him at the outset; but Defendant may then seek to proceed pro se.

## III.  CONCLUSION

We AFFIRM Defendant's conviction and REMAND to the district court with directions to vacate his sentence and then resentence him.