In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-1763

LADERIAN MCGHEE,

*Petitioner-Appellant,*

*v.*

MICHAEL A. DITTMANN,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:12-cv-00320-NJ — **Nancy Joseph**, *Magistrate Judge.*

ARGUED MAY 28, 2015 — DECIDED JULY 22, 2015

Before BAUER, EASTERBROOK, and RIPPLE, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Laderian McGhee filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Wisconsin, challenging his 2004 convictions in Wisconsin state court. In the petition, he asserted, among other claims, that the state court had deprived him of his Sixth Amendment right to self-representation under *Faretta v. California*, 422 U.S. 806 (1975). The district court denied the petition. We granted a certificate of appealability

limited to his self-representation claim. For the reasons set forth in this opinion, we affirm the judgment of the district court.

# I

## BACKGROUND

### A.

In the early morning hours of April 9, 2004, two women were mugged on the street in Milwaukee, Wisconsin, and their purses taken. A vehicle was also taken from the street and driven to another location. Police arrested Mr. McGhee in connection with the offenses.

Mr. McGhee was later charged in the Milwaukee County Circuit Court with armed robbery, theft of movable property from a person, and operating a vehicle without the owner's consent. The public defender's office appointed attorney Richard E. Thomey II as his counsel.

Mr. McGhee was tried by a jury in August 2004. On the first day of trial, defense counsel notified the court that Mr. McGhee wished to raise an alibi defense and requested that he be allowed to call two unlisted witnesses. Counsel acknowledged that he had not provided proper notice of this defense, but explained that Mr. McGhee had not mentioned it to him until two days before trial. Defense counsel also moved to withdraw as Mr. McGhee's attorney. He submitted that withdrawal was warranted because (1) Mr. McGhee wished to discharge him; and (2) based on his knowledge of the case, he believed that putting on Mr. McGhee's alibi de-

fense raised "certain ethical problems."[1] After hearing arguments from both sides, the court denied the motions.

Following the court's rulings, Mr. McGhee asked to speak, at which point the following exchange occurred:

> **THE DEFENDANT:** Okay. Well, first of all, the man never—my attorney never asked me about no alibi. So how can I address him with my alibi if I never even seen him? I called his office several times. He doesn't return my phone calls to come see me. How can I tell him I have a alibi if I can't get in touch with him? I'm in the prison. I'm incarcerated. He's my attorney. He supposed to come see me. He doesn't come see me.
>
> Second of all, for him to sit up here and say something about my witnesses as far as perjury or anything of that nature, that's a bunch of BS also. I don't know where that came from.
>
> And for you to sit up and try to tell me this man going to be my attorney 'cause of the 15 day thing, the man didn't tell me nothing about that. I'm withdrawing him as my attorney. That's the bottom line of that.
>
> **THE COURT:** All right. You wanted me to discharge him. Do you understand today we're going to trial today?

---

[1] R.20 at 16.

**THE DEFENDANT:** We—I ain't going to no trial today.

**THE COURT:** We're going to trial.

**THE DEFENDANT:** You might be going to trial. I ain't.

**THE COURT:** All right. Now I'll explain to you that if you—

**THE DEFENDANT:** You ain't explain shit to me 'cause I ain't going to no motherfucking trial, period.

**THE COURT:** If you decide to be disruptive—

**THE DEFENDANT:** Fuck the trial. I ain't going to no motherfucking trial. What part of that don't you understand?

**MR. THOMEY:** For my part, I know you denied this motion already, but I'm asking the Court to reconsider.

**THE DEFENDANT:** You going to make me go to trial with a motherfucker that got me guilty before I even get in this motherfucker.

**MR. THOMEY:** I think it'd be difficult for he and I to cooperate in conducting his defense in light of his recent statements.

**THE COURT:** All right. Mr. McGhee, I'm going to give you an opportunity to calm down. I'm going to give you an opportunity to

remain in the courtroom. However, if you're going to—

**THE DEFENDANT:** The man ain't got my best interest at heart. You sitting here trying to make me go to trial with a man who already got me convicted before the damn jury even get in. What fucking part of that don't you understand?

**THE COURT:** All right. You can remove the defendant from the courtroom at this point. Just before the jury comes back, I'll give him an opportunity to return to the courtroom.

**THE DEFENDANT:** I'm not returning to this motherfucker. Evidently you don't understand. This man got me guilty before I even fucking get in the motherfucking courtroom. Shit. What part this jackass doesn't understand?[2]

The court later allowed Mr. McGhee to return to the courtroom. Despite the court's warnings, however, Mr. McGhee did not stay silent for long. Shortly after the start of voir dire, defense counsel, while introducing himself, told prospective jurors that Mr. McGhee would be the only defense witness. Mr. McGhee immediately objected to this remark, stating, "Wait a minute. Wait a minute. What happened to my witnesses?"[3] It appears from the transcript that

---

[2] *Id.* at 19–22.

[3] *Id.* at 32.

the court initially tried to ignore Mr. McGhee's interjection. Mr. McGhee, however, continued to press the issue, at which point the following colloquy took place:

> **THE DEFENDANT:** Your Honor, I want to know how come my witnesses can't come? My attorney apparently doesn't—
>
> **THE COURT:** Mr. McGhee, you get an opportunity to speak through your lawyer.
>
> **THE DEFENDANT:** I want to—
>
> **THE COURT:** We discussed this.
>
> **THE DEFENDANT:** First of all, my witnesses can't come, you won't let me fire my attorney. My attorney done tried to withdraw his self from the case, and you steady trying to make me go through with this case.
>
> **THE COURT:** All right. Mr. McGhee, we've gone through this before. You have an opportunity—
>
> **THE DEFENDANT:** But you—Evidently you not understanding. If the man don't want to represent me, the man got me as guilty already, why would I sit up here, go to trial in front of all these people? The man sat here and told you out his own mouth that he is not trying to defend me. That doesn't make any sense.

**THE COURT:** Mr. McGhee, this is not an opportunity—

**THE DEFENDANT:** It ain't—

**THE COURT:** This isn't an opportunity for you to argue with me.

**THE DEFENDANT:** Finna sit up here and railroad me. I'm not finna sit up here like no idiot. Let the man sit here. He done told you he is not trying to defend. The man ain't even called none of my witnesses. Want me to sit up here go against four people against me. I can't call none of my witnesses in front of all these people. What you think, I'm fucking stupid?

**THE COURT:** Mr. McGhee, if you're going to continue like this, you've been warned.

**THE DEFENDANT:** Fuck warned. I'm telling you if I can't have my witnesses, fuck this trial too. Simple as this. I'm not finna—Nobody in this damn trial sit up here with no lawyer that sat there and told you he not going to defend you.

**THE COURT:** Mr. McGhee.

**THE DEFENDANT:** Nobody in this jury sit up here and let the man—

**THE COURT:** Ladies and gentlemen, at this point we're going to take a recess.

Excuse the jury.

(Jury excused.)

**THE DEFENDANT:** He said all this, and this judge won't do shit about it. Fucking right, and remember that shit too. The motherfucker said he wasn't defending me. This man still going to make me go to court with this motherfucker. They won't let me have my motherfucking witnesses but want me to go to court. Why the fuck would I go to court with a motherfucker that got me sent to prison already? I don't need a motherfucking microphone. Remember that shit. All niggers ain't stupid. I ain't finna sit up here and let your ass railroad me or you either. Sit in this motherfucking courtroom like I'm a fucking dummy. Sit up here and accept this shit.

**THE COURT:** All right. Mr. McGhee, are you going to remain silent while we're proceeding today—

**THE DEFENDANT:** Man—

**THE COURT:** —or are you going to have continued outbursts in the manner you are?

**THE DEFENDANT:** Man, whatever.

**THE COURT:** I'm going to give you a chance, Mr. McGhee, to be quiet and sit there

during the course of this trial, selection of the jury.

**THE DEFENDANT:** You expect me to sit here and not say nothing in my own defense? You expect me—This man ain't speak up for me. Somebody got to speak up for me. If I don't do it, who going to do it?

**THE COURT:** Mr. McGhee, if you're not going to be quiet while we select the jury—

**THE DEFENDANT:** Go ahead, select them.

**THE COURT:** Are you going to remain quiet?

**THE DEFENDANT:** Go ahead, select them.

**THE COURT:** If you have another outburst like that, I'm going to remove you from the courtroom. Do you understand that?

**THE DEFENDANT:** I be removed from this motherfucker sooner or later anyhow. Come on.

**THE COURT:** Are you going to be quiet?

**THE DEFENDANT:** I'll let you all select them. I done say what I had to say.

**THE COURT:** All right.[4]

Following this exchange, the court took a short recess, during which time Mr. McGhee was equipped with a stun belt to prevent further disruptions. Upon reconvening, defense counsel renewed his motion to withdraw, stating, "I think the only way that [Mr. McGhee] can really get a fair trial now is with a new attorney whom he has confidence in and who, from the outset, can explore this alibi defense that he has."[5] The court denied the motion.

Before bringing the jury back in, the court gave Mr. McGhee the option of being handcuffed to his chair rather than wearing the stun belt:

> **THE COURT:** …Instead of the stun belt and the wheelchair and shackle, we will handcuff you and those handcuffs can then be hidden underneath the table if you sit quietly and you sit up close to the table. And there's a skirt around the table, and the jury won't see any of that.
>
> **THE DEFENDANT:** I don't care if the jury see it or not, Your Honor. Don't make no sense. I mean, don't make no difference whether they see it or not 'cause I'm not being represented like I supposed to. And I demand and the man asked to withdraw from the case to you three, four times. What attorney do you know does

---

[4] *Id.* at 34–37.

[5] *Id.* at 44.

> that? And I don't know, for some reason you just got it in your head that you just going to make me keep him as an attorney, make him— I don't know. I don't know. Maybe it's something, but I don't know.[6]

The court eventually decided to leave Mr. McGhee in the stun belt, but to seat him in a regular chair with a belly chain.

After ensuring that Mr. McGhee's chains were not visible to the jury, the court gave Mr. McGhee a final warning about being disruptive, triggering the following exchange:

> **THE COURT:**…Mr. McGhee, again I'm just going to warn you, if you become disruptive and you shout out once again, we'll have to remove the jury and remove you from the courtroom and complete the—
>
> **THE DEFENDANT:** Okay. Well, just give me a chance to speak like everybody else. That's all I ask. If I can speak, we'll have no problems.
>
> **THE COURT:** Sir, you're going to speak through your lawyer.
>
> **THE DEFENDANT:** I can't speak to my lawyer as you already know. I don't know why you keep saying that. We wouldn't have this problem—

---

[6] *Id.* at 46–47.

MR. THOMEY: Do you mean you want to speak throughout the trial or speak when it's your turn to be a witness?

THE DEFENDANT: I mean speak when they saying something. You going to speak up for it. I'm going to speak up for myself if somebody got to say it. Judge ain't going to say it for me.

MR. THOMEY: I can't tolerate putting on that kind of defense. I'm going to have a second chair.

THE COURT: I'm not going to allow it. If he engages in that, I'm going to remove him from the courtroom.

THE DEFENDANT: You're telling me I can't tell my attorney to speak up for me?

THE COURT: You can talk to your lawyer quietly and not shout it out for everybody to hear in the courtroom.

THE DEFENDANT: Ain't talking about shout it out.

THE COURT: During the course of the trial, you'll have opportunities to speak with your lawyer. If you become disruptive, you interrupt the questioning of the jury, you interrupt the questioning of any witnesses, we'll remove you from the courtroom.

THE DEFENDANT: If he don't—You know what, go ahead with the trial.

> **THE COURT:** All right. Let's bring the jury
> back out.[7]

In the proceedings that followed, Mr. McGhee did not again speak out of turn in front of the jury.

The jury found Mr. McGhee guilty on all counts. The court sentenced him to seventeen years' imprisonment followed by ten years of extended supervision.

### B.

On direct appeal, the Court of Appeals of Wisconsin affirmed Mr. McGhee's conviction. Mr. McGhee then filed a petition for review in the Supreme Court of Wisconsin; the court denied his petition as untimely.

In response, Mr. McGhee returned to the court of appeals, where he filed a motion seeking to reinstate his right to a direct appeal, claiming that his trial and appellate counsel had been ineffective. The court of appeals denied his motion, reasoning that Mr. McGhee could pursue his ineffective assistance claim in collateral proceedings under *State v. Knight*, 484 N.W.2d 540 (Wis. 1992). *Knight* sets out the appropriate procedure for pursuing an ineffective assistance of appellate counsel claim in Wisconsin courts. In particular, *Knight* requires that such a claim be pursued via a habeas petition filed in the court that considered the direct appeal. "Such proceedings have come to be known in Wisconsin as '*Knight* petitions.'" *McGee v. Bartow*, 593 F.3d 556, 561 n.2 (7th Cir. 2010).

---

[7] *Id.* at 53–55.

### C.

In November 2007, Mr. McGhee filed a petition for post-conviction relief in the Milwaukee County Circuit Court. In the petition, he asserted, among other claims, that the trial court had erred by not allowing his "request for substitution of counsel."[8]

The court denied the petition. With respect to the substitution issue, the court concluded that "[t]he defendant's failure to pursue this issue on [direct] appeal preclude[d] him from raising [the] issue in the circuit court" on collateral review.[9] As for whether his counsel had been "ineffective for failing to pursue this issue on appeal," the court concluded that that claim was one which would have to "be addressed to the appellate court under *Knight*."[10]

Mr. McGhee did not pursue his substitution-of-counsel argument on appeal. The court of appeals affirmed the circuit court's denial of his other claims, and the Supreme Court of Wisconsin denied discretionary review.

In October 2009, Mr. McGhee filed a federal habeas petition in the district court, alleging, among other claims, that the state trial court had "erred in denying [his request for] substitution of trial counsel."[11] In July 2010, he filed a letter

---

[8] R.17 at 53–55.

[9] *Id.* at 70.

[10] *Id.*

[11] R.1 at 16.

seeking to withdraw voluntarily his petition in order to pursue reinstatement of his direct appeal rights. The district court granted the motion.

Returning to the state supreme court, Mr. McGhee filed a petition for a writ of habeas corpus seeking to have his appellate rights reinstated. The court granted the writ, reinstated and deemed timely filed the petition for review in his direct appeal, and denied the petition.

Mr. McGhee then filed a petition for a writ of habeas corpus in the state court of appeals under *Knight*. He asserted that his appellate counsel had been ineffective by failing to appeal the trial court's denial of his "request to dispense with his court appointed attorney and represent himself."[12] The court of appeals denied the petition. It concluded that Mr. McGhee never had "clearly and unequivocally declare[d] [a] desire to represent himself" and thus that his "appellate counsel [could not] be faulted for not arguing [the] issue."[13] The Supreme Court of Wisconsin denied review.

## D.

In April 2012, Mr. McGhee filed a pro se petition for a writ of habeas corpus in the district court. In his petition, he asserted, among other claims, that the state trial court had

---

[12] R.19 at 127.

[13] *Id.* at 212.

violated his "right to discharge counsel and 'SPEAK FOR HIMSELF' (by appearing pro se)."[14]

In its answer, the State contended that Mr. McGhee had not exhausted his self-representation claim. Specifically, it submitted that he had failed to raise the claim on direct appeal and that, when he later did so during his state habeas proceedings, it was within the context of an ineffective-assistance claim. The State also defended Mr. McGhee's conviction on the merits, contending (1) that he never clearly and unequivocally asserted his right to self-representation, and (2) that he forfeited his right to self-representation based on his disruptive conduct.

The district court denied Mr. McGhee's petition. With respect to his self-representation claim, the court determined that the state court of appeals's ruling on his *Knight* petition was sufficient to satisfy the exhaustion requirement for federal habeas review. Turning to the merits, the court concluded that Mr. McGhee's request to proceed pro se was ambiguous and thus that the state court had not erred in denying his *Faretta* claim. The court declined to issue a certificate of appealability.

Mr. McGhee timely appealed and sought a certificate of appealability from this court with respect to his *Faretta* claim only. We granted the certificate.[15]

---

[14] R.1 at 11.

[15] The district court had jurisdiction over Mr. McGhee's petition under 28 U.S.C. § 2254(a). Our jurisdiction is secure under 28 U.S.C. §§ 1291 and 2253(a).

## II

## DISCUSSION

On appeal, Mr. McGhee contends that his 2004 convictions were obtained in violation of his Sixth Amendment right to self-representation and that the state court's determination that he had not clearly and unequivocally invoked that right was objectively unreasonable.[16] We review the dis-

---

[16] On appeal, the State does not contend, as it did before the district court, that Mr. McGhee procedurally defaulted on his self-representation claim by failing to assert it on direct appeal. *Compare Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004) (concluding that an ineffective assistance claim was insufficient to exhaust "the underlying issue that the attorney in question neglected to raise"), *with McGhee* v. *Bartow*, 593 F.3d 556, 567 n.9 (7th Cir. 2010) ("[W]e have recognized that in some circumstances, where ineffective assistance claims are presented as a means to reach the embedded claims and those claims are the real substance of a petitioner's challenge, we will consider them fairly presented." (internal quotation marks omitted)). Indeed, when the issue was raised at oral argument, counsel for the State openly acknowledged that it was "not arguing procedural default," explaining (in an apparent about-face) that Mr. McGhee's *Knight* petition was sufficient to preserve his *Faretta* claim for federal habeas review. Oral Argument at 9:41. Because the State has declined to pursue this issue on appeal, we need not address it here. The procedural default doctrine "is an affirmative defense that the State is obligated to raise and preserve, and consequently one that it can waive." *Eichwedel v. Chandler*, 696 F.3d 660, 669 (7th Cir. 2012) (internal quotation marks omitted). Here, because the State concedes that it is "not arguing procedural default," we consider the issue waived. *See id.* at 670 (concluding that the State had waived a procedural default defense by deliberately choosing not to assert it); *see also United States v. Webster*, 775 F.3d 897, 904 (7th Cir. 2015) (noting that arguments not raised in a party's opening brief are waived).

trict court's denial of Mr. McGhee's habeas petition de novo. *Smith v. Brown*, 764 F.3d 790, 795 (7th Cir. 2014).

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a petitioner whose claim has been "adjudicated on the merits in State court," only if the state court's adjudication of that claim (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d). "'Unreasonable' in [the AEDPA] context means more than just incorrect; it means something…lying well outside the boundaries of permissible differences of opinion." *Corcoran v. Neal*, 783 F.3d 676, 683 (7th Cir. 2015) (internal quotation marks omitted). "The relevant decision for purposes of our assessment under AEDPA is the decision of the last state court to rule on the merits of the petitioner's claim," *Eichwedel v. Chandler*, 696 F.3d 660, 671 (7th Cir. 2012) (internal quotation marks omitted)—in this case, the decision of the Court of Appeals of Wisconsin denying post-conviction relief.

The Supreme Court's decision in *Faretta v. California*, 422 U.S. 806 (1975), establishes the substantive law governing our analysis of Mr. McGhee's claim. In *Faretta*, the Court held that criminal defendants have a Sixth Amendment right to self-representation, *see id.* at 819, and that, to exercise that right, a defendant must "knowingly and intelligently" waive his right to counsel, *see id.* at 835. The Court further concluded that, under the facts of the case, the defendant's right to self-representation had been violated. *See id.* at 835–36. In reaching this conclusion, the Court emphasized, among oth-

er facts, that the defendant had "clearly and unequivocally declared to the trial judge that he wanted to represent himself and did not want counsel." *Id.* at 835. On the basis of this language, many courts, including the Court of Appeals of Wisconsin, have interpreted *Faretta* as requiring that a defendant "clearly and unequivocally" articulate a desire to represent himself in order to invoke his *Faretta* rights.[17]

Here, Mr. McGhee does not contest this widely held view of *Faretta*. Rather, he contends that he is entitled to habeas relief because the state court's determination that he had not clearly and unequivocally invoked his *Faretta* rights was objectively unreasonable. Specifically, he submits that his desire for self-representation was evident from the following: (1) his repeated demands to discharge his attorney, (2) his declaration that he was going to "speak up for [himself]" and that he could not be "expect[ed]…to sit [t]here and…say nothing in [his] own defense," and (3) his request "to speak like everybody else."[18] Taken together, Mr. McGhee asserts, these statements leave "no question that [he] was requesting

---

[17] *See United States v. Oakey*, 853 F.2d 551, 553 (7th Cir. 1988) ("A demand to proceed *pro se* must be unequivocal."); *Gill v. Mecusker*, 633 F.3d 1272, 1293 (11th Cir. 2011) ("Although *Faretta* was not primarily concerned with clarity and equivocation in making a request to proceed *pro se*, it is clear from the Court's decision that a trial court's obligation to conduct a '*Faretta* hearing,' at which a defendant is made aware of the dangers and disadvantages of self-representation, is triggered by the defendant's clear and unequivocal assertion of a desire to represent himself." (alteration omitted) (internal quotation marks omitted)); *State v. Darby*, 766 N.W.2d 770, 776–78 (Wis. Ct. App. 2009) (collecting cases).

[18] R.20 at 36–37, 53; Appellant's Br. 27–28.

to represent himself."[19] In response, the State submits that none of Mr. McGhee's statements, "whether viewed in isolation or in [the] aggregate, amount to a clear and unequivocal invocation of [his] right [to] self-representation."[20]

The State's argument makes clear that the Court of Appeals of Wisconsin reached a reasonable conclusion. Mr. McGhee never clearly articulated a desire to represent himself. A request to discharge counsel, without more, ordinarily does not signal a clear desire for self-representation. *See United States v. Long*, 597 F.3d 720, 724 (5th Cir. 2010) ("[S]omething more than just firing one's attorney is required before one clearly and unequivocally requests to proceed *pro se*."). Here, although Mr. McGhee did request, explicitly, to discharge his attorney, he never asked to forego counsel entirely.[21] Tellingly, when asked whether he was ready to proceed to trial that day without counsel, Mr. McGhee did not ask to represent himself, but rather declared that he was not "going to no trial today."[22] Because this statement suggests that Mr. McGhee was "seeking more time to retain other counsel rather than seeking to proceed

---

[19] Appellant's Br. 29.

[20] Appellee's Br. 29.

[21] Although Mr. McGhee certainly was frustrated with the proceedings and with the performance of his attorney, statements expressing such frustration do not clearly communicate a desire to conduct one's own defense. *See United States v. Conlan*, 786 F.3d 380, 391 (5th Cir. 2015) ("A general expression of dissatisfaction with an attorney should not be construed as an invocation of the *Faretta* right to represent oneself…." (internal quotation marks omitted)).

[22] R.20 at 20.

*pro se*," we cannot conclude that it expresses a clear desire for self-representation. *United States v. Jones*, 938 F.2d 737, 742 (7th Cir. 1991); *see also United States v. Loya-Rodriguez*, 672 F.3d 849, 857 (10th Cir. 2012) (noting that conduct which could be construed as "result[ing] from a desire for different counsel" does not clearly and unequivocally express a desire for self-representation).

Similarly, Mr. McGhee's declaration that he was going to "speak up for [himself]" and that he could not be "expect[ed] …to sit [t]here and…say nothing in [his] own defense" do not clearly communicate a desire to proceed without counsel.[23] Mr. McGhee made these statements during the course of an expletive-ridden tirade against the court's earlier rulings excluding his witnesses and denying the withdrawal of his attorney. During that outburst, he accused the court of trying to "railroad" him and stated that he was not going to "sit…[t]here and accept" it.[24] Further, when warned about his behavior, Mr. McGhee responded, "Fuck warned. I'm telling you if I can't have my witnesses, fuck this trial too."[25] Viewed in this context, Mr. McGhee's desire to "speak up for [himself]" suggests an intent to disrupt the proceedings rather than a request for self-representation.

Finally, Mr. McGhee's request "to speak like everybody else" does not clearly express a desire for self-representation.[26] Whether considered in isolation or in con-

---

[23] *Id.* at 36–37.

[24] *Id.* at 36.

[25] *Id.* at 35.

[26] *Id.* at 53.

text, this statement is ambiguous. *See Loya-Rodriguez*, 672 F.3d at 858 (concluding that a defendant's request "to communicate…, personally and verbally, during the following hearings, with the Court,…without the help of an attorney" did not clearly indicate a desire for self-representation). At the time Mr. McGhee made this request, he had just been reprimanded for his disruptive courtroom behavior. When asked what he meant by the request, Mr. McGhee responded, "I mean speak when they saying something. You going to speak up for it. I'm going to speak up for myself if somebody got to say it. Judge ain't going to say it for me."[27] The court understood these remarks as a request for permission to interrupt the proceedings. In light of Mr. McGhee's prior disruptive conduct, we believe that the court's interpretation of his remarks was reasonable.[28] Thus, even if his request to "speak like everybody else" could be interpreted as a request to proceed without counsel, it certainly does not constitute a *clear and unequivocal* demand to do so. *See Burton v. Collins*, 937 F.2d 131, 134 (5th Cir. 1991) ("The fact that there is more than one reasonable interpretation of the dialog between Burton and the trial judge is, in a sense, the best evidence that Burton did not clearly and unequivocally assert his right to self-representation."); *cf. United States v. Best*, 426

---

[27] *Id.* at 54.

[28] We also note that Mr. McGhee did nothing to correct the court's alleged misunderstanding of his request. Rather, after the court made clear that it understood his remarks as a request for permission to interrupt the proceedings, Mr. McGhee responded, "You're telling me I can't tell my attorney to speak up for me?" *Id.* Such a statement does not sound like the response of a defendant wishing to represent himself; indeed, it suggests exactly the opposite.

F.3d 937, 942 (7th Cir. 2005) (noting that "we will indulge every reasonable presumption against [a defendant's] waiver" of his Sixth Amendment right to counsel (internal quotation marks omitted)).

Viewing these various requests together, as Mr. McGhee suggests, does not change our conclusion. Whether considered individually or in the aggregate, Mr. McGhee's statements do not clearly and unequivocally communicate a desire for self-representation. The state court's decision was certainly not unreasonable. The district court properly denied habeas relief.

## Conclusion

Because the state court reasonably determined that Mr. McGhee had not clearly and unequivocally invoked his *Faretta* rights, the judgment of the district court is affirmed.

AFFIRMED