In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-1031

PAUL N. EICHWEDEL,

*Petitioner-Appellant*,

*v.*

NEDRA CHANDLER, Warden,

*Respondent-Appellee*.

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 3:08-cv-50077—**Philip G. Reinhard**, *Judge*.

ARGUED SEPTEMBER 29, 2011—DECIDED AUGUST 29, 2012

Before RIPPLE, MANION and SYKES, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Paul Eichwedel is an inmate in
the Dixon Correctional Center ("DCC"), a prison operated
by the Illinois Department of Corrections ("IDOC")
in Dixon, Illinois. During the course of unrelated civil
litigation in federal court against various IDOC officials,
Mr. Eichwedel, who was proceeding pro se, filed two
motions for sanctions that the district court denied as
"frivolous." Thereafter, the State sought to revoke some

of Mr. Eichwedel's good-conduct credits under a provision of Illinois law that provides for penalties for prisoners who file frivolous motions in litigation against the State. *See* 730 ILCS 5/3-6-3(d). After the State revoked six months of Mr. Eichwedel's good-conduct credits, he challenged the revocation in state court; the state trial court denied relief, and the Appellate Court of Illinois concluded that it lacked jurisdiction to hear Mr. Eichwedel's appeal because of an error attributable to Mr. Eichwedel in filing his appeal.

After unsuccessfully seeking relief in state court for a second time, Mr. Eichwedel filed this petition for a writ of habeas corpus in the United States District Court for the Northern District of Illinois under 28 U.S.C. § 2254. The district court concluded that the Supreme Court never has recognized a First Amendment right to file frivolous motions and that the revocation of Mr. Eichwedel's good-conduct credits was supported by "some evidence in the record." *See Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985). The district court addressed several other issues as well, but Mr. Eichwedel appeals only those two conclusions.

The district court correctly disposed of the right-of-access claim. Because Mr. Eichwedel's sufficiency of the evidence claim turns on an unresolved question of state law, specifically, the interpretation of 730 ILCS 5/3-6-3(d), and because that question is likely to reoccur frequently and affects the administration of justice in both the state and federal courts, we respectfully seek the

assistance of the Supreme Court of Illinois by certifying this controlling question of law.

# I

# BACKGROUND

## A. Facts

### 1.

On February 12, 2001, Mr. Eichwedel, proceeding in forma pauperis, brought a pro se civil rights action under 42 U.S.C. § 1983 in the United States District Court for the Central District of Illinois against twenty-three IDOC officials. Several months later, the defendants moved to dismiss Mr. Eichwedel's complaint for failure to state a claim upon which relief could be granted. Mr. Eichwedel, however, believed that, because the court had not dismissed his complaint under the screening provisions of the Prison Litigation Reform Act, the district court already had concluded that his complaint stated a claim upon which relief could be granted. *See* 28 U.S.C. § 1915A. Mr. Eichwedel arrived at this conclusion after reviewing a "MEMORANDUM TO ALL INMATE LITIGANTS RE: PRISON LITIGA-TION REFORM ACT,"[1] which had been prepared by the chief judge of the federal district and which had been posted in the DCC library. This memorandum instructed that "federal Courts must deny leave to proceed *in forma*

---

[1] Pet'r App. at 51; *accord* R.1 at 16.

*pauperis* if the complaint fails to state a claim upon which relief may be granted."[2] After reading this memorandum, Mr. Eichwedel concluded that the district court must have determined earlier that his complaint stated a claim upon which relief could be granted because he had been allowed to proceed in forma pauperis. Therefore, on September 4, 2001, Mr. Eichwedel filed a motion to sanction the defendants and their attorney under Rule 11 of the Federal Rules of Civil Procedure, asserting that their motion to dismiss was frivolous. Mr. Eichwedel filed a second motion for sanctions on September 22, 2001, in which he asserted that the defendants had mischaracterized the facts and the law in their response to his first motion for sanctions.

The district court denied Mr. Eichwedel's first motion for sanctions "as frivolous" on October 9, 2001, stating:

> The plaintiff essentially argues that the defendants should be sanctioned because this court's granting of in forma pauperis status to the plaintiff amounts to a favorable screening under 28 U.S.C. § 1915A. This argument is frivolous. The court has not yet conducted a merit review of the plaintiff's complaint under 28 U.S.C. § 1915A. Such a review may be conducted before docketing, "if feasible," or "as soon as practicable after docketing." 28 U.S.C. § 1915A(a). Given the court's heavy caseload, a merit review of this case will not likely be practicable until the court rules

---

[2]  Pet'r App. at 53; *accord* R.1 at 13.

on the defendants' motion to dismiss. The fact that the plaintiff has been granted leave to proceed in forma pauperis and the defendants have been served means nothing with regard to the merit of the plaintiff's claims.[3]

The district court denied Mr. Eichwedel's second motion for sanctions "as frivolous" by minute entry on October 29, 2001.[4]

On October 23, 2001, Mr. Eichwedel filed a motion in the district court to alter or amend its ruling on his first motion for sanctions. The court denied the motion on November 8, 2001. It reasoned:

The plaintiff maintains that he had reasonable grounds, albeit mistaken, to file his motion for sanctions, making it non-frivolous. The court does not doubt that the plaintiff believed he had grounds for his motion, but his subjective beliefs do not determine whether his motion was *legally* frivolous. A filing is legally frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Finding that the plaintiff's motions for sanctions were frivolous has no bearing on the ultimate merit of the plaintiff's claims in this case.[5]

---

[3]  R.7-5.

[4]  R.7-6.

[5]  R.7-7 (emphasis in original).

Certain of Mr. Eichwedel's claims ultimately survived the defendants' motion to dismiss, and the case subsequently was settled.


**2.**

On November 1, 2001, IDOC issued two disciplinary reports against Mr. Eichwedel, which alleged that each of Mr. Eichwedel's motions for sanctions constituted a separate violation of 730 ILCS 5/3-6-3(d). Simply put, that statute authorizes IDOC to revoke up to 180 days of a prisoner's good-conduct credit if, during the course of litigation brought against the prison, "the court makes a specific finding that a pleading, motion, or other paper filed by the prisoner is frivolous."[6] On

---

[6] At the time that the Prisoner Review Board revoked Mr. Eichwedel's good-conduct credits, the statute provided in pertinent part:

> If a lawsuit is filed by a prisoner in an Illinois or federal court against the State, the Department of Corrections, or the Prisoner Review Board, or against any of their officers or employees, and the court makes a specific finding that a pleading, motion, or other paper filed by the prisoner is frivolous, the Department of Corrections shall conduct a hearing to revoke up to 180 days of good conduct credit by bringing charges against the prisoner sought to be deprived of the good conduct credits before the Prisoner Review Board as provided in subparagraph (a)(8) of Section 3-3-2 of this Code. If

(continued...)

6 (...continued)
   the prisoner has not accumulated 180 days of good
   conduct credit at the time of the finding, then the
   Prisoner Review Board may revoke all good conduct
   credit accumulated by the prisoner.

   For purposes of this subsection (d):

   (1) "Frivolous" means that a pleading, motion, or other
   filing which purports to be a legal document filed by
   a prisoner in his or her lawsuit meets any or all of the
   following criteria:

       (A) it lacks an arguable basis either in law or
       in fact;

       (B) it is being presented for any improper
       purpose, such as to harass or to cause unneces-
       sary delay or needless increase in the cost of
       litigation;

       (C) the claims, defenses, and other legal con-
       tentions therein are not warranted by existing
       law or by a nonfrivolous argument for
       the extension, modification, or reversal of
       existing law or the establishment of new law;

       (D) the allegations and other factual conten-
       tions do not have evidentiary support or, if
       specifically so identified, are not likely to have
       evidentiary support after a reasonable oppor-
       tunity for further investigation or discovery; or

       (E) the denials of factual contentions are not
       warranted on the evidence, or if specifically so
       identified, are not reasonably based on a lack

                                          (continued...)

November 4, 2001, Mr. Eichwedel sent a letter to the district court, inquiring as to whether the court intended its use of the word "frivolous" to be the same as the definition of "frivolous" set forth in 730 ILCS 5/3-6-3(d).

The Adjustment Committee held a hearing regarding these disciplinary reports on November 14, 2001. The only witnesses were Mr. Eichwedel and Carolyn Zee, a prison librarian. According to the Adjustment Committee's Final Summary Reports, Zee testified that she had posted Judge Mihm's memorandum about the Prison Litigation Reform Act in the prison library. The Final Summary Reports also state that Mr. Eichwedel testified that "he relied on a memorandum posted on [sic] July

---

[6] (...continued)
        of information or belief.

730 ILCS 5/3-6-3(d). To invoke this statute, 730 ILCS 5/3-3-2(a)(8) provided that the Prisoner Review Board shall

> hear by at least one member and, through a panel of at least 3 members, decide cases brought by the Department of Corrections against a prisoner in the custody of the Department for court dismissal of a frivolous lawsuit pursuant to Section 3-6-3(d) of this Code in which the Department seeks to revoke up to 180 days of good conduct credit, and if the prisoner has not accumulated 180 days of good conduct credit at the time of the dismissal, then all good conduct credit accumulated by the prisoner shall be revoked[.]

A later amendment changed each occurrence of "good conduct" in these statutes to "sentence." This change is irrelevant to our analysis, and we therefore do not consider it further.

of 1996 by Chief U.S. District Judge Michael Mihm entitled: Memorandum to all Inmate Litigants Re; [sic] Prison Litigation Reform Act" in filing his motions for sanctions.[7] Mr. Eichwedel also noted that the district court did not sanction him for filing these motions. The Final Summary Reports further provide that Mr. Eichwedel sought the testimony of the district judge who had employed the word "frivolous" in denying Mr. Eichwedel's motions for sanctions. The committee did not allow Mr. Eichwedel to call Judge Baker to testify because the "[t]estimony would be cumulative."[8]

Following this hearing, the Adjustment Committee found that each of Mr. Eichwedel's motions for sanctions constituted a violation of 730 ILCS 5/3-6-3(d). The Committee's stated basis for finding that the first motion for sanctions was a violation of this statute was:

---

[7]  R.7-10 at 1; *see also* R.7-9 at 1.

[8]  R.7-10 at 1; R.7-9 at 1. It may be that Mr. Eichwedel did not seek to have Judge Baker testify, but rather to have the questions that he sent to Judge Baker admitted as evidence. Pet'r Br. 7. However, the Adjustment Committee's Final Summary Reports list "BAKER, JUDGE HAROLD" as a witness that was "[r]equsted [b]y [the] [i]nmate," but whose "[t]estimony would be cumulative." R.7-10 at 1; R.7-9 at 1. This apparent discrepancy is not material to the issues before us, so we do not attempt to resolve it. Nor do we suggest that Judge Baker could have been compelled to testify in such a proceeding. *Cf. United States v. Morgan*, 313 U.S. 409, 422 (1941) ("Such an examination of a judge would be destructive of judicial responsibility.").

> Evidence in [the disciplinary report[9]] that inmate is
> in violation of 730 ILCS 5/3-6-3(d) as Judge Harold A.
> Baker of the United States District Court for the
> Central District of Illinois has denied motion 01-CV-
> 3044 filed by above named inmate as frivolous and
> the physical evidence of the order issued by Judge
> Baker the committee finds him guilty.[[10]]

The Committee's stated basis for finding that the second motion for sanctions was a violation of the statute was substantially the same, relying on "the physical evidence of the minute entry by Judge Baker."[11] Based on these findings, the Adjustment Committee recommended that six months of Mr. Eichwedel's good-conduct credit be revoked: two months for his first motion for sanctions and four months for the second. The Prisoner Review Board approved these recommendations on appeal.

On January 23, 2002, the district court took up Mr. Eichwedel's November 4 letter requesting that the court clarify its findings of frivolousness, which the court denominated "as a motion to reconsider the court's description of the plaintiff's motions for sanctions as

---

[9] The disciplinary reports contained no additional information about Mr. Eichwedel's alleged violations. Each is based on a prison employee's review of the same orders cited by the Adjustment Committee.

[10] R.7-10 at 1.

[11] R.7-9 at 1. The Final Summary Reports make no mention of the district court's order from November 8, 2001.

frivolous."[12] "The court s[tood] by its use of the word frivolous to describe the motions, because they had no basis in law or fact, as explained in the October 9, 2001 order."[13] It continued:

> As to the revocation of the plaintiff's good time credit under 730 ILCS 5/3-6-3(d), the court has made no finding its characterization of the plaintiff's motions as frivolous means the same as the term frivolous under 730 ILCS 5/3-6-3(d). The court cannot control the defendants' response to the court's use of the word frivolous, and the plaintiff cannot challenge the application of 730 ILCS 5/3-6-3(d) to him in these proceedings.[14]

## B. State Court Proceedings

After exhausting his administrative appeals of the disciplinary action, Mr. Eichwedel filed a pro se complaint in Illinois state court on August 19, 2002, seeking a writ of mandamus, declaratory judgment and a writ of certiorari to restore his good-conduct credits based on alleged violations of state law, denials of due process and violations of the First Amendment, including the right of access to the courts. As relevant here, Mr. Eichwedel asserted that 730 ILCS 5/3-6-3(d) denies

---

[12] R.7-8 at 1.

[13] *Id.* (citation omitted).

[14] *Id.* at 1-2.

prisoners their right of access to the courts because, in his view, the average prisoner will be unwilling to risk the loss of good-conduct credits and therefore will refrain from bringing actions subject to the statute. He also contended that the Adjustment Committee had before it no evidence that he had violated 730 ILCS 5/3-6-3(d) because that statute may only be invoked where there is a "specific finding" by the court that a motion is "frivolous," which is a defined term. Because the Adjustment Committee considered only the orders of October 9 and October 29, which used the word "frivolous" without invoking any particular standard, Mr. Eichwedel asserted that the Adjustment Committee's finding of guilt was predicated solely upon the Committee's interpretation of those orders. Mr. Eichwedel also invited to the state trial court's attention the January 23 order to show that the district court expressly had declined to invoke 730 ILCS 5/3-6-3(d).

The state trial court dismissed his complaint. It noted that "plaintiff wishes to retry issues already ruled upon by Judge Baker" and reasoned that Mr. Eichwedel had not established a right to the relief he sought.[15] It further stated:

> Statutes bear a strong presumption of constitutionality. These statutes clearly define their terms and lay out the procedure and penalties which are available to the Department of Corrections.

---

[15] R.7-21 at 3.

These statutes are not unconstitutionally vague
or broad.[16]

The state trial court delivered this opinion on March 10,
2003, and instructed the defendants' counsel to prepare
an appropriate order. That order, which dismissed
all claims against all defendants, was entered on April 17,
2003.

Mr. Eichwedel filed his notice of appeal on April 15,
2003, two days before the state trial court entered its
final order. Upon realizing that this sequence might
pose problems for his appeal, Mr. Eichwedel filed a
motion in the state trial court seeking either entry of
the "dismissal order *nunc pro tunc*" or clarification as to
whether he must file another notice of appeal in order
to preserve his right to appeal.[17] The state trial court
dismissed the motion, stating: "The Court believes
that plaintiff's appeal has been placed on the Appellate
Court's calendar. The plaintiff's rights have not been
prejudiced in any manner."[18]

Despite these assurances by the trial court, the Appel-
late Court of Illinois dismissed Mr. Eichwedel's appeal.
Although it "agree[d] with [Mr.] Eichwedel that the
trial court [misled] him about the jurisdictional prere-

---

[16] *Id.*

[17] R.7-22 at 1.

[18] R.7-23.

quisites to an appeal,"[19] the Appellate Court concluded that it lacked jurisdiction because Mr. Eichwedel's notice of appeal was filed before the final judgment was entered. The Supreme Court of Illinois denied Mr. Eichwedel's petition for leave to appeal. Mr. Eichwedel then attempted to pursue these claims for a second time by filing another state court complaint, which was dismissed on the ground of res judicata. That judgment was affirmed by the Appellate Court of Illinois, and the Supreme Court of Illinois denied Mr. Eichwedel's petition for leave to appeal.

### C. Petition for Writ of Habeas Corpus

Mr. Eichwedel filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254 in the United States District Court for the Northern District of Illinois on May 5, 2008. In his petition, Mr. Eichwedel asserted: (1) that 730 ILCS 5/3-6-3(d) is unconstitutionally vague and overbroad in violation of the First and Fourteenth Amendments; (2) that, as applied to him, 730 ILCS 5/3-6-3(d) and 730 ILCS 5/3-3-2(a)(8) violate the First and Fourteenth Amendments; and (3) that the revocation of his good-conduct credits deprived him of liberty without due process in violation of the Fourteenth Amendment.

The district court determined that the state trial court's opinion was the relevant opinion on habeas re-

---

[19] R.7-4 at 6.

view because it was the last state court to address Mr. Eichwedel's claims on the merits. Although it noted that the state trial court's opinion "was terse at best,"[20] and that "[i]t is hard to imagine a more threadbare analysis,"[21] the district court concluded that the state trial court's resolution of the vagueness, overbreadth and as-applied challenges was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States. *See* 28 U.S.C. § 2254(d)(1).

The district court then turned to Mr. Eichwedel's due process claims. Mr. Eichwedel's habeas petition asserted that IDOC's revocation of his good-conduct credits violated his right to due process in various respects: by not giving him fair notice of an internal IDOC rule change; by failing to follow IDOC's internal hearing procedures; and by revoking his good-conduct credits without some evidence in the record that he had violated 730 ILCS 5/3-6-3(d). He also asserted that his right to due process and equal protection were violated because the courts of Illinois had treated a similarly situated inmate differently in a previous case. With respect to Mr. Eichwedel's due process claims premised upon IDOC's failure to give him fair notice of the rule change and upon IDOC's failure to follow its own hearing procedures, the State asserted that he failed to present properly these claims during his appeal of the

---

[20] R.11 at 3.

[21] *Id.*

state trial court's order. The State addressed the "some evidence" challenge on its merits. It also addressed Mr. Eichwedel's hybrid equal protection and due process challenge on its merits in the interest of efficiency, although the State maintained that the claim was unexhausted. The State did not assert that Mr. Eichwedel's claims were procedurally defaulted in their entirety based on his failure to appeal properly the state trial court's determination. On appeal, the State has represented that it "declined to assert the default in the district court" because "the trial court's advice to [Mr. Eichwedel] . . . might arguably amount to cause to excuse the default of the claims in this appeal."[22]

The district court determined that Mr. Eichwedel had procedurally defaulted his due process claims premised upon IDOC's failure to give him fair notice of a rule change and to follow its own hearing procedures. Mr. Eichwedel's hybrid due process and equal protection claim was rejected because the district court determined that the circumstances surrounding the revocation of Mr. Eichwedel's good-conduct credit were factually distinguishable from those of the inmate who Mr. Eichwedel had alleged was similarly situated. The district court also rejected, on the merits, Mr. Eichwedel's assertion that his good-conduct credits had been revoked without "some evidence in the record." It concluded that the two orders in which Judge Baker denied Mr. Eichwedel's motions for sanctions as

---

[22] Resp't Br. 4 n.4.

frivolous were "ample evidence . . . that petitioner had in fact violated § 5/3-6-3(d)."[23]

Mr. Eichwedel appeals the district court's judgment. We have appointed counsel to represent him before this court.

## II

## DISCUSSION

On appeal, Mr. Eichwedel asserts that 730 ILCS 5/3-6-3(d) deprives him of his right of access to the courts and that IDOC denied him due process by revoking his good-conduct credits by reference to a record that did not contain "some evidence" of his guilt. Before we may proceed, we must consider whether Mr. Eichwedel has preserved properly these issues and whether our review is constrained by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d).

### A.  Procedural Default

We first consider whether Mr. Eichwedel has procedurally defaulted his claims. *See Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010). In a footnote in the statement of the case of its appellate brief, the State notes that "petitioner's present claims are procedurally defaulted because the appellate court declined to reach the merits

---

[23] R.11 at 5.

of petitioner's claims based on an independent and adequate state law ground."[24] It continues: "Because petitioner did not file another notice of appeal, and the first notice was premature, the appellate court dismissed petitioner's appeal for lack of jurisdiction."[25] The State further explains, however, that, "because of the trial court's advice to [Mr. Eichwedel], which might arguably amount to cause to excuse the default of the claims in this appeal, [the State] declined to assert the default in the district court."[26] The State is correct in concluding that Mr. Eichwedel procedurally defaulted the claims now before us. "[W]hen a state refuses to adjudicate a petitioner's federal claims because they were not raised in accord with the state's procedural rules, that will normally qualify as an independent and adequate state ground for denying federal review." *Woods v. Schwartz*, 589 F.3d 368, 373 (7th Cir. 2009).

However, "[t]he procedural default doctrine does not impose an absolute bar to federal relief." *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004). "[I]t is an affirmative defense that the State is obligated to raise and preserve, and consequently one that it can waive." *Id.* at 515. The State therefore may forfeit this affirmative defense by not asserting it before the district court. *Id.* at 517. There is no question that the State has forfeited the procedural default defense by not raising it before the

---

[24] Resp't Br. 4 n.4.

[25] *Id.*

[26] *Id.*

district court. *See id.* Furthermore, it also has waived this defense, as evidenced by its various litigation decisions in the district court and on appeal. First, the State's decision to address the merits of Mr. Eichwedel's due process claim during the district court proceedings, while arguing that Mr. Eichwedel had procedurally defaulted other claims not at issue here, is evidence of the State's intent to waive this defense, at least as to that claim. *See id.* at 516-17. Furthermore, the State's discussion of the procedural default issue in this court is limited to one footnote. *See Long v. Teachers' Ret. Sys. of Illinois*, 585 F.3d 344, 349 (7th Cir. 2009) ("A party may waive an argument by disputing a district court's ruling in a footnote or a one-sentence assertion that lacks citation to record evidence."). That this footnote is in the State's "Statement of the Case" and not its "Argument" is further evidence of waiver. *See* Fed. R. App. P. 28(a)(9)(A), (b) (requiring appellee's brief to contain the appellee's "contentions and the reasons for them").[27] Most significantly, the State concedes in its brief that it deliberately

---

[27] *See also Martinez-Serrano v. INS*, 94 F.3d 1256, 1259 (9th Cir. 1996) ("[A]n issue referred to in the appellant's statement of the case but not discussed in the body of the opening brief is deemed waived."); *cf. Wehrs v. Wells*, No. 11-3369, ___ F.3d ___, 2012 WL 3194243, at *4 n.2 (Aug. 8, 2012) (deeming an argument waived where it was raised in one sentence in the summary of argument and once again in the conclusion of the brief); *Bob Willow Motors, Inc. v. Gen. Motors Corp.*, 872 F.2d 788, 795 (7th Cir. 1989) (concluding that an argument that was raised summarily and only in the text of the Summary of Argument was waived).

chose not to raise this procedural default defense in the district court proceedings. *See Perruquet*, 390 F.3d at 516 (explaining that a party waives a procedural default defense by "intentionally relinquishing its right to assert that defense"); *see also Broaddus v. Shields*, 665 F.3d 846, 853 (7th Cir. 2011) (relying on party's concession that he did not raise an argument in the district court in concluding that the party waived the argument); *cf. United States v. Jaimes-Jaimes*, 406 F.3d 845, 848 (7th Cir. 2005) (explaining that a party's tactical decision not to raise an argument before the district court constitutes waiver of that argument). When these litigation decisions are considered in the aggregate, it is clear that the State has waived its procedural default defense to the claims Mr. Eichwedel now raises on appeal.

The State does not contend that Mr. Eichwedel has failed to exhaust the remedies available to him in the courts of Illinois. AEDPA, however, provides that "[a] State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement." 28 U.S.C. § 2254(b)(3). Some courts have held that § 2254(b)(3) extends to certain procedural defaults, while others have declined to do so.[28] We

---

[28] *Compare Franklin v. Johnson*, 290 F.3d 1223, 1231 (9th Cir. 2002) (concluding "that 28 U.S.C. § 2254(b)(3)'s reference to exhaustion has no bearing on procedural default defenses"), *and Jackson v. Johnson*, 194 F.3d 641, 651-52 & n.35 (5th Cir. 1999) (distinguishing procedural default from exhaustion and declin-

(continued...)

have not yet taken a position on this question,[29] and we need not do so in this case. Because we reject the merits of Mr. Eichwedel's right-of-access claim, we need not consider whether § 2254(b)(3) applies to his procedural default of that claim.[30] Furthermore, because the State represented to the district court that the "some evidence" challenge "was properly exhausted during mandamus proceedings in state court,"[31] it has expressly waived any independent exhaustion argument,[32] as well as any exhaustion argument included within the doc-

---

[28] (...continued)
ing to apply § 2254(b)(3) to a procedural default), *with McNair v. Campbell*, 416 F.3d 1291, 1305 (11th Cir. 2005) ("Because § 2254(b)(3) provides that the State can waive McNair's failure to properly exhaust his claim only by expressly doing so, it logically follows that the resulting procedural bar, which arises from and is dependent upon the failure to properly exhaust, can only be waived expressly." (citing *Franklin*, 290 F.3d at 1238 (O'Scannlain, J., concurring in part and concurring in the judgment))).

[29] *See Cheeks v. Gaetz*, 571 F.3d 680, 686 n.1 (7th Cir. 2009); *Perruquet v. Briley*, 390 F.3d 505, 515-16 (7th Cir. 2004).

[30] *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

[31] R.7 at 26.

[32] *See Thomas v. Indiana*, 910 F.2d 1413, 1415 (7th Cir. 1990) (holding, pre-AEDPA, that a State "expressly waived" an argument during habeas proceedings by "expressly conced[ing]" the point in its brief (emphasis omitted)).

trine of procedural default. As our sister circuits have held, a State expressly waives exhaustion for purposes of § 2254(b)(3) where, as here, it concedes clearly and expressly that the claim has been exhausted, regardless of whether that concession is correct.[33]

## B. Applicable Standards

Having determined that the procedural default noted by the State is no obstacle to the claims raised in this appeal, we now turn to the applicable standards of review. If a "claim . . . was adjudicated on the merits in State court proceedings," our review of the state court's judgment is limited by AEDPA. 28 U.S.C. § 2254(d); *see also Harrington v. Richter*, 131 S. Ct. 770, 780 (2011). AEDPA dictates that a federal court may not issue the

---

[33] *See Cornell v. Kirkpatrick*, 665 F.3d 369, 376 (2d Cir. 2011); *Carty v. Thaler*, 583 F.3d 244, 256-57 (5th Cir. 2009) (citing *Bledsue v. Johnson*, 188 F.3d 250, 254 (5th Cir. 1999)); *Sharrieff v. Cathel*, 574 F.3d 225, 228-29 (3d Cir. 2009); *Pike v. Guarino*, 492 F.3d 61, 71-72 (1st Cir. 2007); *Kerns v. Ault*, 408 F.3d 447, 449 n.3 (8th Cir. 2005); *Gonzales v. McKune*, 279 F.3d 922, 926 & n.8 (10th Cir. 2002) (en banc); *Dorsey v. Chapman*, 262 F.3d 1181, 1187 (11th Cir. 2001); *see also D'Ambrosio v. Bagley*, 527 F.3d 489, 496-97 (6th Cir. 2008) (holding that State's attorney's conduct during district court proceedings was sufficient to expressly waive exhaustion under § 2254(b)(3)); *id.* at 500 (Boggs, C.J., dissenting) (stating that the majority was "quite correct that no 'magic words' are needed" for there to be an express waiver under § 2254(b)(3)).

writ unless the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "The relevant decision for purposes of our assessment under AEDPA is the decision of the last state court to rule on the merits of the petitioner's claim[] . . . ." *Morgan v. Hardy*, 662 F.3d 790, 797 (7th Cir. 2011). If, however, a claim was not adjudicated on the merits by a state court, we must "dispose of the matter as law and justice require," 28 U.S.C. § 2243, which is essentially de novo review, *Morales v. Johnson*, 659 F.3d 588, 599 (7th Cir. 2011). In any event, our review of the district court's denial of habeas relief is de novo. *See Morgan*, 662 F.3d at 797.

The parties agree that the state trial court adjudicated Mr. Eichwedel's habeas claims on the merits,[34] and we see no reason to disagree with that assessment. Section "2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Richter*, 131 S. Ct. at 785. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits

---

[34] Pet'r Br. 10 n.7 ("The last state court decision to address the claims on the merits is the trial court's decision in Eichwedel's first mandamus action."); Resp't Br. 17 ("The last state court to rule on the merits of petitioner's claims was the state trial court in petitioner's first round of mandamus review.").

in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 784-85. This "presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 785. For instance, "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991), *cited with approval in Richter*, 131 S. Ct. at 785. When the presumption does apply, AEDPA requires us to "determine what arguments or theories . . . could have supported[] the state court's decision." *Richter*, 131 S. Ct. at 786. Next, we "must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e Supreme] Court." *Id.*; *see also Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011) (describing this review as a "high threshold").

Although the state trial court's opinion "was terse at best,"[35] it indicated that the court was "fully advised in the premises"[36] and that Mr. Eichwedel did not establish any constitutional violation. The state trial court dismissed Mr. Eichwedel's action under 735 ILCS 5/2-619, which the Illinois courts treat as a merits determination. *See Rein v. David A. Noyes & Co.*, 665 N.E.2d 1199, 1204 (Ill. 1996). Therefore, Mr. Eichwedel "has failed to show that the

---

[35] R.11 at 3.

[36] R.7-21 at 3.

[Illinois trial court's] decision did not involve a determination of the merits of his claim," and "[s]ection 2254(d) applies to his petition."[37] *Richter*, 131 S. Ct. at 785; *see also Price v. Thurmer*, 637 F.3d 831, 839 (7th Cir. 2011) (concluding that *Richter* "precludes our inferring error from the [state] court's failure to discuss particular pieces of evidence").

Despite Mr. Eichwedel's failure to perfect his appeal in state court, we have before us a merits determination from the state trial court for purposes of AEDPA. A claim is "adjudicated on the merits," as that term is used in § 2254(d), if there is "'a decision finally resolving the parties' claims, with *res judicata* effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground.'" *Muth v. Frank*, 412 F.3d 808, 815 (7th Cir. 2005) (quoting *Sellan v. Kuhlman*, 261 F.3d 303, 311 (2d Cir. 2001)). In this case, the state trial court's dismissal of Mr. Eichwedel's claims has claim-preclusive effect. "It makes no difference that an appeal was attempted but was thwarted by failure to satisfy procedural requirements." 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 4433 (2d ed. 2002).[38] If the state appellate

---

[37] Indeed, as noted above, Mr. Eichwedel has conceded that AEDPA applies in this case.

[38] *See also Thomas v. Horn*, 570 F.3d 105, 116 (3d Cir. 2009) (discussing *Fahy v. Horn*, 516 F.3d 169 (3d Cir. 2008), in which the petitioner voluntarily abandoned his state court appeal,

(continued...)

court had heard the appeal and decided to affirm the trial court based on a procedural ground, such as a waiver or forfeiture of the claim, then the state court's determination would not be "on the merits" for purposes of § 2254(d). *See Liegakos v. Cooke*, 106 F.3d 1381, 1385 (7th Cir. 1997).[39] Because the state appellate court did not hear the case at all, however, the state trial court's opinion retains its claim-preclusive effect and is therefore entitled to deference under § 2254(d). We therefore turn to the merits.

## C.  Right of Access to the Courts

Mr. Eichwedel asserts that 730 ILCS 5/3-6-3(d) "directly contradict[s] clear Supreme Court precedent establishing the right of prisoners to pursue meritorious civil rights actions in the courts." Pet'r Br. 11 (citing *Lewis v. Casey*, 518 U.S. 343, 351 (1996), and *Bounds v. Smith*, 430 U.S. 817, 821 (1977)). However, an inmate may prevail on a right-of-access claim only if the official actions at issue "hindered his efforts to pursue a legal claim." *Lewis*, 518 U.S. at 351. Indeed, "the very point of recognizing

---

[38] (...continued)

and concluding that *Fahy* properly applied § 2254(d) because "the lower court's decision on the merits was the decision that finally resolved the claims").

[39] *See also Thomas*, 570 F.3d at 115 (noting that an appellate court's rejection of a petitioner's claims on procedural grounds "stripped the [trial] court's substantive determination . . . of preclusive effect").

any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong." *Christopher v. Harbury*, 536 U.S. 403, 414-15 (2002).

The record before us establishes that the underlying action was resolved by settlement on terms favorable to Mr. Eichwedel.[40] Mr. Eichwedel does not claim that his discipline under 730 ILCS 5/3-6-3(d) "hindered his efforts to pursue a legal claim" in the underlying litigation, *Lewis*, 518 U.S. at 351, as would be the case, for instance, if the discipline he received under 730 ILCS 5/3-6-3(d) "caused the . . . inadequate settlement of a meritorious case," *Harbury*, 536 U.S. at 414.

Mr. Eichwedel does assert that 730 ILCS 5/3-6-3(d) has a "strong chilling effect" that "impermissibly discourages prisoners from seeking to pursue valid claims by heightening the risk of filing lawsuits." Pet'r Br. 12; *see also id.* at 17 (asserting that 730 ILCS 5/3-6-3(d) "takes a major step toward causing . . . prisoners to be shut out of court" (alteration omitted) (internal quotation marks omitted)). He has failed to establish, however, that the State's invocation of 730 ILCS 5/3-6-3(d) has interfered, or is interfering, in any way with his pursuit of any litiga-

---

[40] *See* Pet'r Br. 3; R.1 at 25; *see also* Pet'r Br. 2 (characterizing "the underlying litigation []as meritorious" in presenting the issues on appeal); R.7-14 at 12 (describing the dismissal of certain claims in the underlying action as "a Pyrrhic victory" for the defendants in that case); *id.* (referencing "the sheer magnitude of the . . . defendants' defeat" in the underlying action).

tion. Because Mr. Eichwedel has failed to identify any "'nonfrivolous,' 'arguable' underlying claim" that 730 ILCS 5/3-6-3(d) is preventing him from bringing, this argument fails. *See Harbury*, 536 U.S. at 415 (quoting *Lewis*, 518 U.S. at 353 & n.3).

Moreover, Mr. Eichwedel asserts that the motions at issue in this case resulted from "a single mistaken argument made in good faith," which, in his view, he had a constitutional right to file. Pet'r Br. 15. As a preliminary matter, this argument does not characterize accurately the statutory scheme. Section 5/3-6-3(d) does not authorize punishment for "a mistaken argument"—only for "a pleading, motion, or other paper" after a court has made a "specific finding" that the filing is "frivolous." Regardless, the Supreme Court has held that the Constitution does not protect a person's right to file frivolous lawsuits. *See Bill Johnson's Rests. v. N.L.R.B.*, 461 U.S. 731, 743 (1983) ("[B]aseless litigation is not immunized by the First Amendment right to petition."); *see also Lewis*, 518 U.S. at 353 n.3 ("Depriving someone of a frivolous claim[] . . . deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions."). Mr. Eichwedel seeks to distinguish the principle announced in *Bill Johnson's Restaurants* from the case at hand by asserting: (1) that the principle is limited "to frivolous suits that are filed knowingly, or at least negligently, or that involve intentional falsehoods"; and (2) that the principle is limited to frivolous litigation and does not reach frivolous motions filed during meritorious litigation. Pet'r Br. 15.

We previously have rejected Mr. Eichwedel's first contention.

> [*Bill Johnson's Restaurants*] lists "intentional false-hoods" and "knowingly frivolous claims" merely as two examples, and not as an exhaustive list, of types of claims that have no protection under the First Amendment. The Court's subsequent discussion makes clear that[] . . . claims which present no material questions of fact or law have no First Amendment protection.

*Geske & Sons, Inc. v. N.L.R.B.*, 103 F.3d 1366, 1372 n.9 (7th Cir. 1997).

As to Mr. Eichwedel's second point, the discussion in *Bill Johnson's Restaurants* indeed was focused on frivolous litigation and not frivolous motions. Mr. Eichwedel places heavy emphasis on this point, asserting that "punish[ing] prisoners for filing a frivolous argument in one single motion, rather than an entire frivolous suit or action[,] . . . . goes too far beyond the plain language of [*Bill Johnson's Restaurants*]." Pet'r Br. 15. The baseline, in Mr. Eichwedel's view, appears to be that the right of access to the courts grants him a right to make any filing, whether frivolous or not, that he subjectively believes to be appropriate in litigation against his jailers as long as there is some merit to that underlying litigation. He interprets *Bill Johnson's Restaurants* as a narrow exception to this broad, general rule.

According to Mr. Eichwedel, the holding in *Bill Johnson's Restaurants*—that frivolous litigation is not constitutionally protected—supports the conclusion that

frivolous motions filed in pursuit of a nonfrivolous claim are protected. AEDPA, however, limits our review to "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The principle espoused by Mr. Eichwedel is not established by Supreme Court precedents, and "[e]xtrapolation from Supreme Court authority is not enough to overcome the deference to state-court decision-making built into § 2254(d)." *Sweeney v. Carter*, 361 F.3d 327, 334 (7th Cir. 2004).

In conclusion, we note that the statute at issue does more than vindicate the burden imposed on the judiciary by the filing of frivolous suits on motions in state or federal court. It provides prison officials with a tool to curb behavior that is inimical to rehabilitative efforts and to good order and discipline within the institution. Mr. Eichwedel has failed to establish that no fairminded jurist could conclude that the right of access to the courts, as it has been interpreted by the Supreme Court of the United States, prevents a state from punishing the behavior regulated by 730 ILCS 5/3-6-3(d).[41]

---

[41] On appeal, Mr. Eichwedel has not argued that any prison official invoked 730 ILCS 5/3-6-3(d) in retaliation for Mr. Eichwedel's bringing the underlying action. *Cf. DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000) ("Prisoners have a constitutional right of access to the courts that, by necessity, includes the right to pursue the administrative remedies that must be exhausted before a prisoner can seek relief in court. Thus, a prison official may not retaliate against a prisoner

(continued...)

We therefore turn to Mr. Eichwedel's due process claim.

### D. The "Some Evidence" Requirement

The State of Illinois has created a statutory right to good-conduct credit for the inmates in its prisons. *See Hamilton v. O'Leary*, 976 F.2d 341, 344 (7th Cir. 1992) (citing 730 ILCS 5/3-6-3). Illinois inmates, therefore, have a liberty interest in their good-conduct credits that entitles them "to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated." *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). A revocation of good-conduct credits complies with due process if the inmate receives:

> (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by

---

[41] (...continued)

because that prisoner filed a grievance [or filed a lawsuit]."). Mr. Eichwedel raised this argument in the state court, but he no longer advances it, and it therefore is not before us.

Instead of focusing on the motives of the prison officials who invoked 730 ILCS 5/3-6-3(d), *see Spiegla v. Hull*, 371 F.3d 928, 942 (7th Cir. 2004), Mr. Eichwedel now focuses on the general *effect* of that statute. As we have explained, however, Mr. Eichwedel has not demonstrated that he is entitled to habeas relief on that theory.

> the factfinder of the evidence relied on and the reasons for the disciplinary action.

*Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff*, 418 U.S. at 563-67). Due process also requires that "the findings of the prison disciplinary board [be] supported by some evidence in the record." *Id.*

The "some evidence" standard of *Hill* is satisfied if "there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-56. Stated differently, "[t]his standard is met if 'there was some evidence from which the conclusion of the administrative tribunal could be deduced.'" *Id.* at 455 (quoting *United States ex rel. Vajtauer v. Comm'r of Immigration*, 273 U.S. 103, 106 (1927)). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* "The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board." *Id.* at 457. "[O]nly evidence that was presented to the Adjustment Committee is relevant to this analysis." *Hamilton*, 976 F.2d at 346.

The Final Summary Reports indicate that Mr. Eichwedel was charged with "Violating State or Federal Laws" and that he was "in violation of 730 ILCS 5/3-6-3(d)."[42] That statute authorizes IDOC "to revoke up to 180 days" of a

---

[42] R.7-10 at 1; *accord* R.7-9 at 1.

prisoner's good-conduct credit if that prisoner files a lawsuit against the State "and the court makes a specific finding that a pleading, motion, or other paper filed by the prisoner is frivolous." 730 ILCS 5/3-6-3(d). "For purposes of this subsection . . ., '[f]rivolous' means that a pleading, motion, or other filing which purports to be a legal document filed by a prisoner in his or her law-suit meets any or all of [five listed] criteria[] . . . ." *Id.* § 5/3-6-3(d)(1).

To determine if there was "some evidence" that Mr. Eichwedel violated this statute, we must ascertain the elements of 730 ILCS 5/3-6-3(d). *See Gamble v. Calbone*, 375 F.3d 1021, 1027 (10th Cir. 2004).[43] The parties dispute whether 730 ILCS 5/3-6-3(d) may be invoked properly where a court uses the term "frivolous" to describe a filing but provides no indication of what definition, if any, it is using to reach that conclusion. Mr. Eichwedel asserts that the court must indicate that it is using the term "frivolous" in the manner contemplated by the statute before a petitioner's good-conduct credit may be revoked. *See* Pet'r Br. 22.[44] The State responds

---

[43] *Superceded by state statute on other grounds as recognized in Magar v. Parker*, 490 F.3d 816, 819 (10th Cir. 2007).

[44] In his state court complaint, Mr. Eichwedel argued that the State

> refused to follow the requirements mandated by 730 ILCS 5/3-6-3(d) which authorizes the IDOC to bring charges against a prisoner for filing a frivolous motion

(continued...)

that "[t]he long-standing and commonly understood meaning of a frivolous claim is one that 'lacks an arguable basis either in law or in fact,'"[45] that "[t]his well-established definition is consistent with the definition of frivolous in 730 ILCS 5/3-6-3(d)(1)(A)"[46] and that "[t]here can be no doubt that the district court employed precisely that definition when it found the motions frivolous."[47]

To resolve this dispute, we begin by looking to the opinion of the state trial court in the matter before us. *See Bates v. McCaughtry*, 934 F.2d 99, 102 (7th Cir. 1991). As

--------

[44] (...continued)
> **ONLY AFTER** 'the court makes a **SPECIFIC FINDING** that a motion filed by the prisoner is frivolous' . . . as that term is defined by the statute.

R.7-14 at 42 (alterations omitted) (emphasis in original). He asserted that "the Adjustment Committee's finding of guilt[] . . . was predicated solely upon **ITS INTERPRETATION** of Judge Baker's October 9, 2001 and October 29, 2001 Orders." *Id.* at 35 (emphasis in original).

[45] Resp't Br. 34 (quoting, *e.g., Neitzke v. Williams*, 490 U.S. 319, 325 (1989)).

[46] *Id.* at 35. 730 ILCS 5/3-6-3(d)(1)(A) provides that a filing is frivolous if "it lacks an arguable basis either in law or in fact."

[47] Resp't Br. 35. The State supports this last point by citing the order of November 8. As the State acknowledges, however, that order was not before the prison disciplinary board at the time it made its decision. *See id.* at 35; *see also Hamilton v. O'Leary*, 976 F.2d 341, 346 (7th Cir. 1992) ("[O]nly evidence that was presented to the Adjustment Committee is relevant to this analysis.").

relevant here, the state trial court found the following facts to be uncontroverted: that "[o]n October 9, 2001, U.S. District Judge Harold Baker denied plaintiff's motion for sanctions as frivolous" and that "[o]n October 29, 2001, Judge Baker ruled that plaintiff's second motion for sanctions was frivolous."[48] In the course of its analysis, that court indicated that it would not allow Mr. Eichwedel "to retry issues already ruled upon by Judge Baker."[49] Then, after stating that 730 ILCS 5/3-6-3(d) "clearly define[s its] terms and lay[s] out the procedure and penalties which are available to the Department of Corrections," the state court denied Mr. Eichwedel's claim on its merits.[50] This passage suggests that the state trial court concluded that the district court's use of the term "frivolous" constituted the requisite "specific finding[s]" of frivolousness within the meaning of 730 ILCS 5/3-6-3(d).[51] To the extent that there is any doubt as to whether the state court construed the statute in this manner, we "must determine what arguments or theories . . . could have supported[] the state court's

---

[48] R.7-21 at 2.

[49] *Id.* at 3.

[50] *Id.*

[51] Indeed, in concluding that Mr. Eichwedel's second state action was barred by res judicata, the Appellate Court of Illinois stated: "In dismissing plaintiff's complaint, the [state trial court] found that section 3-6-3(d) of the Code was applicable because the federal court had specifically found that plaintiff's motions for sanctions were frivolous." R.37 at 8.

decision" to deny Mr. Eichwedel's petition. *Richter*, 131 S. Ct. at 786. In addressing a constitutional challenge to the sufficiency of the evidence, we must assume that the state court "engag[ed] in a two-step process: first, it clarifie[d] the meaning of the uncertain term by deciding what historical facts suffice or are not necessary to establish the element, and second, it decide[d] that the evidence at [the hearing] support[ed] an inference that the necessary historical facts were present." *Anderson-Bey v. Zavaras*, 641 F.3d 445, 449 (10th Cir. 2011) (discussing, *e.g.*, *Bates*, 934 F.2d 99).[52]

Here, the language in the operative state trial court order, when read in light of the *Richter* presumption, requires us to conclude that the state trial court did not read 730 ILCS 5/3-6-3(d) to require any specific invocation of that statute or of any of the five definitions of frivolousness contained therein before a prison disciplinary board may invoke the statute. Nevertheless, we have significant doubts about the state trial court's apparent rendition of the elements. First, the plain lan-

---

[52] *See also Evans v. McBride*, 94 F.3d 1062, 1064 (7th Cir. 1996) (noting, in the context of a "some evidence" challenge, that "[i]t may be hard in practice to separate evidentiary insufficiency from a mistaken interpretation of the [state] law's substantive requirements"), *disapproved of on other grounds by White v. Indiana Parole Bd.*, 266 F.3d 759, 765-66 (7th Cir. 2001); *cf. Gamble v. Calbone*, 375 F.3d 1021, 1027 (10th Cir. 2004) (determining elements of state offense to address a "some evidence" challenge to the revocation of good-conduct credits where no state court had done so in the matter before the court).

guage of the statute requires that the court make a "specific finding that a [filing] is frivolous." 730 ILCS 5/3-6-3(d). Furthermore, the statute provides:

"Frivolous" means that a pleading, motion, or other filing which purports to be a legal document filed by a prisoner in his or her lawsuit meets any or all of the following criteria:

(A) it lacks an arguable basis either in law or in fact;

(B) it is being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(C) the claims, defenses, and other legal contentions therein are not warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(D) the allegations and other factual contentions do not have evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; or

(E) the denials of factual contentions are not warranted on the evidence, or if specifically so identified, are not reasonably based on a lack of information or belief.

730 ILCS 5/3-6-3(d)(1). Therefore, the statute defines frivolous to *mean* five particular things and explicitly provides that a court must make a *specific finding* that one of those definitions has been satisfied before IDOC may seek to revoke good-conduct credit under 730 ILCS 5/3-6-3(d). *See Duncan v. Walker*, 533 U.S. 167, 174 (2001) ("It is our duty to give effect, if possible, to every clause and word of a statute." (internal quotation marks omitted)); *People ex rel. Illinois Dep't of Corr. v. Hawkins*, 952 N.E.2d 624, 631-32 (Ill. 2011) ("The statute should be read as a whole and construed so as to give effect to every word, clause, and sentence; we must not read a statute so as to render any part superfluous or meaningless.").

Our unease about the correctness of the state trial court's interpretation of the elements of the offense is heightened by intervening decisions of the Appellate Court of Illinois that support the alternate textual reading. For instance, in *People v. Collier*, 900 N.E.2d 396, 406 (Ill. App. Ct. 2008), the court found a trial court's order revoking a prisoner's good-conduct credits "disquieting" where its order contained "none of" the "five separate criteria" listed in 730 ILCS 5/3-6-3(d)(1) in addition to other flaws not relevant for present purposes. *Collier* suggests, therefore, that a court must indicate which of the five statutory definitions of frivolousness it is invoking in order for 730 ILCS 5/3-6-3(d) to be satisfied. Other cases from that court suggest a little flexibility as long as the

court makes clear its intent to invoke 730 ILCS 5/3-6-3(d).[53]
Notably, the regulation implementing 730 ILCS 5/3-6-3(d)

---

[53] For instance, in *People v. Shaw*, 898 N.E.2d 755, 758 (Ill. App. Ct. 2008), the state trial court "f[ound] that [a prisoner's filing] was frivolous and patently without merit" within the meaning of the Illinois Post-Conviction Hearing Act, and it "directed the circuit clerk to mail a copy of its written order to defendant's prison warden so that a hearing could be conducted, pursuant to section 3-6-3(d) . . ., to determine whether some of defendant's good-conduct credit should be revoked because he filed a frivolous pleading." The appellate court noted that

> the plain language of section 3-6-3(d) of the Code . . . directs the procedure that must take place after a trial court finds a defendant's postconviction petition is *frivolous under the [Post-Conviction Hearing] Act*. Specifically, DOC is required to hold a hearing to determine if defendant violated [the regulation implementing 730 ILCS 5/3-6-3(d)] before DOC can revoke any good-conduct credit.

898 N.E.2d at 766 (emphasis added) (citation omitted). The Supreme Court of Illinois has held that a petition is "frivolous," as that term is used in the Post-Conviction Hearing Act, "only if [it] has no arguable basis either in law or in fact." *People v. Hodges*, 912 N.E.2d 1204, 1209 (Ill. 2009). Section 3-6-3(d)(1)(A) includes within its definition of "frivolous" any filing that "lacks an arguable basis either in law or in fact." Therefore, it would seem that a finding that an item is "frivolous" within the meaning of the Post-Conviction Hearing Act would be sufficient to satisfy the plain meaning of 730 ILCS 5/3-6-3(d), particularly where the court then forwards its finding to IDOC so that proceedings under 730 ILCS 5/3-6-3(d) may be held, as occurred in *Shaw* and in *People v. Shevock*, 818 N.E.2d 921, 922-23 (Ill. App. Ct. 2004).

sets out the following offense: "A pleading, motion, or other paper filed by the offender for which the court, *in accordance with 730 ILCS 5/3-6-3*, has found to be frivolous." Ill. Admin. Code tit. 20, § 504 app. A (emphasis added). The "in accordance with" clause comes in the middle of "the court . . . has found," which suggests, at the very least, that the court must invoke and apply one of the definitions in 730 ILCS 5/3-6-3(d) before a prisoner may be punished for violating this disciplinary rule.[54] However, in this case, the disciplinary board had before it only a pair of orders using the word "frivolous"—one of them in a single-sentence minute entry. The disciplinary board simply did not have before it evidence of a "specific finding" that one of the five statutory definitions of "frivolous[ness]" had been made "in accordance with 730 ILCS 5/3-6-3(d)."

We also are concerned that the broad interpretation given the statute by the state trial court in the case before us might frustrate the intended purpose of 730 ILCS 5/3-6-3(d). The legislature crafted a detailed statute that gives very specific meaning and content to the term "frivolous." The legislature may well have been concerned that such meticulous crafting of the statute was necessary because, in the common parlance

---

[54] Indeed, at oral argument, Mr. Eichwedel's counsel conceded that 730 ILCS 5/3-6-3(d) could be invoked properly, in his view, where a court states expressly that a filing was frivolous because it lacked an arguable basis in law or fact, even if the court does not cite 730 ILCS 5/3-6-3(d).

of the legal profession, the term "frivolous" is often employed in a broader sense as a synonym for "meritless," when that distinction has no immediate legal significance.[55] The use of the general term "frivolous" does not apply expressly any precise definition of frivolousness—let alone one of the definitions in 730 ILCS 5/3-6-3(d). Under these circumstances, it would seem inappropriate to presume that the court has considered the precise meaning given that term by the legislature. The statute requires a "specific finding" of frivolousness by the deciding judge, not a guess by an administrative body as to whether the judge made such a finding based on an interpretation of the court's dicta. Indeed, even when courts are called on to consider expressly whether a filing is frivolous, they often struggle to draw the line between frivolous filings and meritless filings. *See United States v. Eggen*, 984 F.2d 848, 850 (7th Cir. 1993) ("A more difficult question is whether, although Eggen's appeal plainly lacks merit, it can be pronounced frivolous."). Given the significant possibility that the state trial court did not take into account appropriately the legislative concerns in crafting 730 ILCS 5/3-6-3(d), we are reluctant to employ its interpretation of the statute in determining whether there was evidence to support a determination of a violation of the statute in the subsequent prison disciplinary proceeding.

---

[55] For instance, *Black's Law Dictionary* defines "frivolous" as: "Lacking a legal basis or legal merit; not serious; not reasonably purposeful <a frivolous claim>." Black's Law Dictionary 739 (9th ed. 2009).

We also note that the construction of 730 ILCS 5/3-6-3(d) upon which the state trial court apparently settled attributes to the Illinois General Assembly an intention that strains significantly the usual relationship of the judiciary to administrative bodies by allowing administrative bodies to second-guess judicial judgments. When, as in this case, it is the judgment of federal courts that state administrative bodies are interpreting, the strain is especially significant, given the comity inherent in our federal system. We *certainly* do not mean to say that any revocation of good-conduct credits based on a finding of frivolousness made by a federal court is exempt from 730 ILCS 5/3-6-3(d). To the contrary, federal judges in the State of Illinois—including the district judge who used the word "frivolous" in denying Mr. Eichwedel's motions—repeatedly have invoked the statute.[56] In doing so, however, they have made their intention clear to State authorities that the underlying litigation position of the prisoner was frivolous *within the terms of the state*

---

[56] *See Hibberd v. Jennings*, No. 07-3131, 2011 WL 1232149, at *13 (C.D. Ill. Mar. 30, 2011) (Baker, J.); *Cook v. Standley*, No. 10-3183, 2010 WL 3433060, at *3 (C.D. Ill. Aug. 26, 2010) (Baker, J.); *Arnold v. Williams*, No. 07-1178, 2010 WL 2697156, at *5 (C.D. Ill. July 7, 2010) (Baker, J.); *Thompson v. Quinn*, No. 10-1101, 2010 WL 1692690, at *1-2 (C.D. Ill. Apr. 27, 2010) (Baker, J.); *cf. Gevas v. McLaughlin*, No. 08-1379, 2011 WL 39721, at *7 (C.D. Ill. Jan. 6, 2011) ("advis[ing]" a prisoner that the court might later find that certain claims are frivolous if he continues pursuing them and that such a finding could result in a revocation of good-conduct credits under 730 ILCS 5/3-6-3(d)).

*statute.*[57] We find it difficult to attribute to the legislature an intent to permit a prison disciplinary board to give a meaning to the order of a federal or state judicial officer that was not intended.

In this case, the normal course of state appellate review was truncated after the trial court—in the words of the Appellate Court of Illinois—"misle[d Mr. Eichwedel] about the jurisdictional prerequisites to an appeal."[58] Therefore, neither the Appellate Court nor the Supreme Court of Illinois had the opportunity to hear Mr. Eichwedel's appeal and correct any error in the state trial court's opinion.

Although we are required to apply state law as interpreted by the state courts, we have significant doubt as to whether 730 ILCS 5/3-6-3(d) means what the state trial court apparently concluded that it means. Because of the odd procedural route this case has taken and the intervening case law that supports what appears to be the plain wording of the statute, we hesitate to treat the

---

[57] *See Hibberd*, 2011 WL 1232149, at *16 ("As discussed above, the court finds Plaintiff pled frivolous claims in his complaint. *See* 730 ILCS 5/3-6-3(d). The clerk of the court is directed to fax a copy of this order to Assistant Illinois Attorney General Chris Higgerson."); *Cook*, 2010 WL 3433060, at *3-4 ("find[ing]" that the suit was frivolous, invoking 730 ILCS 5/3-6-3(d) and "direct[ing]" that a copy of the order be mailed to a representative of the State); *Arnold*, 2010 WL 2697156, at *5 (same); *Thompson*, 2010 WL 1692690, at *1-2 (same).

[58] R.7-4 at 6.

state trial court's opinion as a definitive statement of state law.[59] When presented with similar situations, other federal courts, in the interest of comity, have elected to certify questions of law to the state court of last resort to determine what state law was on the date of the relevant state court opinion. *See Fiore v. White*, 528 U.S. 23 (1999) (certifying to the Supreme Court of Pennsylvania the question of what a state statute meant on the date of the petitioner's conviction where that court denied the petitioner leave to appeal his conviction directly and where that court subsequently concluded that the statute under which the petitioner was convicted did not prohibit the conduct for which he had been convicted); *Policano v. Herbert*, 453 F.3d 75 (2d Cir. 2006) (per curiam) (certifying to New York Court of Appeals the question of what a state statute meant on the date of the petitioner's conviction where there was substantial doubt on the matter); *Burleson v. Saffle*, 278 F.3d 1136 (10th Cir. 2002) (certifying to the Oklahoma Court of Criminal Appeals the question of what the statute under which the petitioner had been convicted meant on the date of the petitioner's conviction where that court had disposed of the petitioner's claim summarily and, shortly thereafter, announced a rule which, if applied in the petitioner's case, would

---

[59] *See Fagan v. Washington*, 942 F.2d 1155, 1159 (7th Cir. 1991) ("When in doubt, we think it both impetuous and impolitic to impute to a state trial judge a misunderstanding of state law.").

implicate the petitioner's rights under the Double Jeopardy Clause).[60]

In our view, certification presents the optimal method of assuring respect for the decision of the state courts as to the elements of the offense and of assuring that an issue which will recur frequently in both state and federal courts within Illinois, but which might not reach appellate courts with the same frequency, is decided definitively. "The goal of this certification opinion is to obtain from [Illinois]'s highest court its view of the relevant principles of [Illinois] law—not to tell that Court how, in our view, [Illinois] law ought to be interpreted." *Policano*, 453 F.3d at 76. Our reading of the statute and intervening case law, as well as our consideration of the policies underlying the statute, do not empower us to construe the statute; rather, these concerns prompt us to seek a definitive interpretation of Illinois law from the state court of last resort.

---

[60] *See also Emery v. Clark*, 604 F.3d 1102 (9th Cir. 2010) (certifying to the Supreme Court of California the question of what a state statute means where there were conflicting opinions from various courts); *cf. Evanchyk v. Stewart*, 340 F.3d 933, 936 (9th Cir. 2003) (looking to the answer to a question certified to the Supreme Court of Arizona by a federal district court on elements of an Arizona crime and granting habeas on instructional error theory); *Sanford v. Yukins*, 288 F.3d 855, 862-63 (6th Cir. 2002) (looking to the Supreme Court of Michigan's response to a question that the federal district court had certified regarding the meaning of the state statute under which the petitioner had been convicted).

If the Supreme Court of Illinois agrees with the reading of the state trial court, we would be constrained to determine that there was some evidence of a violation of the statute. On the other hand, if the Supreme Court of Illinois were to determine that the statute required the court making the finding of frivolousness to invoke one of the definitions in 730 ILCS 5/3-6-3(d) or otherwise to make its intention to invoke 730 ILCS 5/3-6-3(d) known, there would be no evidence in the administrative record that Mr. Eichwedel had in fact violated the statute.

## Conclusion

Accordingly, in accordance with Illinois Supreme Court Rule 20 and Circuit Rule 52(a), we respectfully request that the Supreme Court of Illinois answer the following question, which may be determinative of this cause:

> As of the date Mr. Eichwedel's state court challenge to the revocation of his good-conduct credits became final, was the State required to establish, in order to revoke a prisoner's good-conduct credit, either that the court making the finding of frivolousness had determined specifically that the filing satisfied one of the definitions of frivolousness in 730 ILCS 5/3-6-3(d) or that the court had otherwise made its intent to invoke 730 ILCS 5/3-6-3(d) known?

We invite reformulation of the question presented if necessary, and nothing in this certification should be read to limit the scope of inquiry to be undertaken by

the Supreme Court of Illinois. Further proceedings in this court are stayed while this matter is under consideration by the Supreme Court of Illinois.

QUESTION CERTIFIED