In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-3469

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MIROSLAW LAGUNA,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 10 CR 342-1—**Virginia M. Kendall**, *Judge.*

ARGUED JUNE 7, 2012—DECIDED AUGUST 14, 2012

Before MANION, KANNE, and HAMILTON, *Circuit Judges*.

KANNE, *Circuit Judge*. Following two felony convictions in 2001, an immigration judge ordered Miroslaw Laguna, a Polish national, removed from the United States. Among other instructions, the final removal order required Laguna to obtain a Polish passport. Laguna refused, and for whatever reason immigration officials never strictly enforced that requirement. But in early 2010, immigration officials changed course and

repeatedly and forcefully warned Laguna about the consequences of failing to obtain a passport. After he refused to heed those new warnings, Laguna was detained and charged with one count of willfully interfering with a final deportation order in violation of 8 U.S.C. § 1253(a)(1)(B) and (C). He was convicted and sentenced to eighteen months' imprisonment. On appeal, Laguna argues that the district court improperly excluded certain exculpatory evidence and deprived him of his constitutional right to assert a complete defense. Finding no error in the district court's ruling, we affirm his conviction.

## I. BACKGROUND

Laguna immigrated to the United States with his parents in 1967, and for much of that time, he remained a lawful permanent resident. His immigration status became complicated in July and August 2001, when he was convicted of unlawful possession of a stolen motor vehicle, among other related offenses. Because those felonies qualified as crimes of moral turpitude under 8 U.S.C. § 1227(a)(2)(A)(ii), an immigration judge ordered Laguna removed from the United States. To effectuate the deportation, the removal order required Laguna to obtain a Polish passport.[1] In June 2004, after he finished serving his state sentences, Immigration and

---

[1] The parties agree that Polish law requires its citizens to use a Polish passport when entering and departing Poland. They also agree that passport applications must be made in person at the Polish consulate.

Custom Enforcement (ICE) officers briefly detained Laguna pursuant to the removal order. But not long after, ICE released Laguna on an order of supervision, which, like the removal order, required Laguna to obtain a passport. As part of his supervised release, Laguna was permitted to work, and he was required to attend in-person meetings with ICE officers once per month—although ICE later relaxed this requirement to once every other month, and eventually, to once per year (with periodic telephone check-ins). For the duration of his supervision, officers pestered Laguna about applying for the passport, but they evidently never pursued the matter with any urgency.

In early 2010, ICE chose to pursue Laguna's refusal to obtain a passport. On February 26 and March 2, Deportation Officer Geoffrey Pepple advised Laguna that he needed to obtain a Polish passport or face consequences for refusing to do so. Laguna initially agreed and completed the requisite application. The Polish consulate then confirmed that his passport would be available on April 21, 2010. Upon learning of his application, ICE ordered Laguna to appear at its offices on April 21 so an officer could accompany him to the Polish consulate to retrieve the passport. That day, Laguna appeared as instructed, but he refused three different times to return to the consulate even after he was expressly told that his refusal to pick up the passport violated his removal and supervision orders and federal law. After officers could not convince him to pick up the passport, ICE revoked Laguna's order of supervision and took him into custody.

On May 19, 2010, a grand jury returned a one-count indictment, charging Laguna with willfully interfering with a final deportation order between April 21 and April 29, 2010, in violation of 8 U.S.C. § 1253(a)(1)(B) and (C). Before trial, the government moved to exclude any evidence suggesting that Laguna had a good-faith reason for refusing to comply with the removal order. In response, Laguna argued that he should be permitted to offer testimony illustrating ICE's course of dealings with him over the years because that relationship revealed that Laguna could not have willfully interfered with a final deportation order. In other words, ICE's liberalized supervision conditioned Laguna to believe that he would not be deported. After reserving judgment on the issue until trial, the district court ruled that Laguna could elicit testimony suggesting he was cooperative with law enforcement or that he did not know the steps he needed to take to obtain a passport. But, the district court prohibited Laguna from offering evidence showing that he was a good, law-abiding person, which according to the district court, skated too closely to jury nullification. After a brief jury trial, Laguna was convicted and sentenced to eighteen months' imprisonment. He filed this timely appeal after the district court denied his motion for a new trial.

## II. ANALYSIS

Before proceeding to the merits, we pause to consider whether Laguna's appeal is moot, *see United States v.*

*Larson*, 417 F.3d 741, 747 (7th Cir. 2005), an argument neither party brought to our attention. For a live controversy to exist, the defendant must suffer from some continuing harm or "collateral consequence" of the conviction. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). Since *Sibron v. New York*, 392 U.S. 40, 54-57 (1968), we presume that all criminal convictions (as opposed to prison disciplinary proceedings, for example) entail adverse collateral consequences. *Spencer*, 523 U.S. at 10; *Diaz v. Duckworth*, 143 F.3d 345, 346 (7th Cir. 1998). With that in mind, we briefly address mootness because Laguna does not face many of the same collateral consequences as other felons. For example, Laguna's incarceration and supervised release have both ended. And his conviction does not affect his right to vote in federal elections (he is not a U.S. citizen), nor does it change his immigration status (he was already removable based on his 2001 state-court convictions). Nevertheless, this dispute remains live because Laguna faces a handful of less obvious consequences, including the possibility that any future testimony may be impeached, Fed R. Evid. 609, or the possibility that any future federal convictions may subject him to a criminal history upgrade, and thus, a longer sentence, U.S.S.G. § 4A1.1, among other potential consequences, *see Sibron*, 392 U.S. at 55 (stating, "most criminal convictions . . . entail adverse collateral legal consequences," while noting that it did not canvass all of the possibilities in any detail). The potential for these collateral consequences is enough for us to determine that Laguna's appeal is not moot.

Even if Laguna's conviction does not entail any collateral consequences, his appeal falls within "a special category of disputes that are 'capable of repetition' while 'evading review.'" *Turner v. Rogers*, 131 S. Ct. 2507, 2515 (2011). We apply this exception to the mootness doctrine when "(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again." *Id.* (internal brackets omitted) (*quoting Weinstein v. Bradford,* 423 U.S. 147, 149 (1975) (per curiam). Laguna's appeal satisfies both criteria. First, Laguna was only sentenced to eighteen months' imprisonment, which is not enough time for him to have obtained full judicial review. *See, e.g., First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 774 (1978). Second, Laguna has consistently refused to obtain a passport dating back to 2004. Like the litigant who faces civil contempt charges for not making timely child-support payments, *Turner*, 131 S. Ct. at 2515, we believe that Laguna's refusal to obtain a passport may continue indefinitely, thus paving the way for additional § 1253(a)(1)(B) charges.

With our jurisdiction secure, we turn to the merits. Laguna's sole argument on appeal is that the district court erred by improperly excluding evidence tending to show that he never *willfully* interfered with his removal. We generally review the district court's decision to exclude evidence for an abuse of discretion, *United States v. Thornton*, 642 F.3d 599, 604 (7th Cir. 2011), and we will reverse and order a new trial only if the purported error is not harmless, *United States v. Boone*,

628 F.3d 927, 932 (7th Cir. 2010). But, because Laguna claims that his excluded testimony violated his constitutional right to present a defense, "we review de novo the question of whether the evidentiary ruling had the effect of infringing that right while still taking into account the permissible scope of the district court's discretion in evidentiary matters." *United States v. Carter*, 410 F.3d 942, 951 (7th Cir. 2005) (internal quotation marks, brackets, and citations omitted).

To support the theory that his intent evidence was improperly excluded, Laguna begins by noting that ICE never punished him for refusing to obtain a passport from 2004 to early 2010. Instead, ICE actually liberalized his supervision order despite his noncompliance with the removal and supervision orders. Laguna then argues that his liberalized supervision and the sum of his interactions with ICE over the years conditioned him to believe that he could not be deported or even disciplined for future violations. He thus reasoned that ICE would remain indifferent towards his April 2010 refusal to obtain a passport. This predicted indifference is the basis for Laguna's belief that he did not willfully violate § 1253(a)(1)(B).

Like all criminal defendants, Laguna has the right to present a defense and offer witness testimony. *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (Criminal defendants must have "a meaningful opportunity to present a complete defense."). But this right is not absolute. Rather, "judges may exclude marginally relevant evidence and evidence posing an undue risk of

confusion of the issues without offending a defendant's constitutional rights." *United States v. Alayeto*, 628 F.3d 917, 922 (7th Cir. 2010). Here, the district court correctly found that Laguna's proposed evidence was irrelevant and would do nothing more than confuse the jury—or in this case, invite the jury to acquit even if the government satisfied each element of the charged offense. In other words, the district court found that the proposed evidence risked jury nullification. *See, e.g., United States v. Perez*, 86 F.3d 735, 736 (7th Cir. 1996) ("An unreasonable jury verdict, although unreviewable if it is an acquittal, is lawless, and the defendant has no right to invite the jury to act lawlessly."). We agree.

Under § 1253(a)(1)(B) and (C), the government need only prove two elements: (1) Laguna was an alien subject to final removal; and (2) Laguna willfully refused to make timely applications for travel documents or took action designed to hamper his departure. Here, Laguna was only indicted for willfully interfering with his removal order during a brief eight-day period in 2010—April 21-29. The uncontested evidence presented at trial shows that Laguna knew he was under a valid removal order and that he refused to travel to the Polish consulate on April 21 even after he was explicitly warned about the consequences of failing to appear. That evidence readily satisfies both elements of § 1253(a)(1)(B) and (C).

Laguna's proposed testimony about his relationship with ICE from 2004 to early 2010 is irrelevant. The statute only requires proof that Laguna voluntarily and

intentionally—that is, willfully—refused to obtain a passport. Any evidence suggesting that some previous relationship with ICE superseded his statutory obligation is immaterial and confusing. In other words, Laguna's evidence did not negate the government's assertion that he (1) knew he was removable, (2) knew he needed to obtain a passport, and (3) knew his express refusal to do so contravened his removal order and federal law. Instead, his evidence only shows that he subjectively believed that he would not be prosecuted, which is no defense at all. Such a defense is akin to a defendant asserting that he knew he violated the law, but he did not think he would be caught. Aside from being irrelevant, the evidence also invites jury nullification. That is, the jury might be compelled to acquit simply because ICE had been lenient with Laguna in the past or on the ground that Laguna was a good guy. Laguna cannot ask the jury to return an unlawful verdict, *see Perez*, 86 F.3d at 736, as the district court rightly held.

Finally, Laguna argues that his proposed defense was the sole legal argument that provided a complete rebuttal to his indictment. This is untrue. The district court expressly provided that Laguna could offer intent evidence showing that he was cooperative with law enforcement or that he did not know the steps he needed to take to obtain a passport. He was also permitted to argue that he was unaware of the outstanding removal order. Each line of testimony properly negates the mens rea element of § 1253(a)(1)(B) and (C) without approaching jury nullification.

### III. Conclusion

Because we find that the district court did not err in excluding certain evidence, we AFFIRM Laguna's conviction.