IN THE

UNITED STATES COURT OF APPEALS

FOR THE SEVENTH CIRCUIT

No. 09-1031

PAUL N. EICHWEDEL,

*Petitioner-Appellant*,

*v.*

BRAD CURRY, the Chief of
Parole for the Illinois Department
of Corrections,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 3:08-cv-50077--**Philip G. Reinhard**, *Judge.*

MOTION TO DISMISS

NOVEMBER 2, 2012[*]

Before RIPPLE, MANION and SYKES, *Circuit Judges.*

---

[*] This opinion is being released initially in typescript form.

RIPPLE, *Circuit Judge*. Paul Eichwedel petitioned for habeas corpus relief challenging the Illinois Department of Corrections' ("IDOC") revocation of six months of his good-conduct credits. The credits were revoked under a provision of state law that permits such penalties for prisoners who file frivolous motions in litigation against the state. *See* 730 ILCS 5/3-6-3(d). On August 29, 2012, we concluded that Mr. Eichwedel's claim turns on an unresolved question of state law. We therefore certified that question to the Supreme Court of Illinois. The Justices of that court have accepted our certification.

Respondent Brad Curry now moves to dismiss the appeal as moot. In his opening brief, Mr. Eichwedel had informed us that three months of good-conduct credits had been restored. Mr. Curry now represents--and Mr. Eichwedel does not dispute--that, on July 12, 2012, IDOC restored the remaining three months of Mr. Eichwedel's previously revoked good-conduct credits. He began his mandatory supervised release on October 3, 2012. Because Mr. Eichwedel now has received all of the relief that he seeks in this habeas action, Mr. Curry asks that we withdraw the certified question and dismiss the appeal.

We agree that the case is now moot and that none of the exceptions to the mootness doctrine are applicable. Accordingly, with our appreciation to the Supreme Court of Illinois for having accepted our certification, we now withdraw that certification and dismiss the appeal as moot.

# I

## BACKGROUND

We assume familiarity with our opinion of August 29, 2012, *Eichwedel v. Chandler*, No. 09-1031, 2012 WL 3711880 (7th Cir. Aug. 29, 2012), and set forth here only those facts necessary to an understanding of the matter now before us.

Paul Eichwedel began his incarceration in October 1987. In 2008, he petitioned for federal habeas corpus relief, challenging IDOC's revocation of six months of his good-conduct credits. The credits had been revoked under a provision of state law that provides penalties for prisoners who file frivolous

motions, as defined in the statute, in litigation against the state. The district court denied relief, and Mr. Eichwedel appealed.

On August 29, 2012, we concluded that Mr. Eichwedel's habeas claim turns on an unresolved question of state law that is likely to recur. We therefore certified the following question to the Supreme Court of Illinois:

> As of the date Mr. Eichwedel's state court challenge to the revocation of his good-conduct credits became final, was the State required to establish, in order to revoke a prisoner's good-conduct credit, either that the court making the finding of frivolousness had determined specifically that the filing satisfied one of the definitions of frivolousness in 730 ILCS 5/3-6-3(d) or that the court had otherwise made its intent to invoke 730 ILCS 5/3-6-3(d) known?

*Eichwedel*, 2012 WL 3711880, at *16.

At the time we certified this question to the Supreme Court of Illinois, we had not been informed by counsel that the last three months of Mr. Eichwedel's good-time credits had been restored.[1] Nevertheless, Mr. Curry now moves to dismiss the appeal as moot. She represents that, on July 12, 2012, IDOC restored the remaining three months of Mr. Eichwedel's previously

---

[1] There is *no* suggestion in the record that counsel willfully withheld this information from the court. Nor is there any evidence that counsel was negligent in maintaining contact with their clients. We are constrained to point out, however, that counsel should take reasonable steps to remain informed of developments in the client's case and to report those developments to the court. *See Fusari v. Steinberg,* 419 U.S. 379, 390-91 (1974) (Burger, C.J., concurring). We are aware, of course, of the difficulties that counsel experience in keeping in touch with an incarcerated individual and of the difficulties presented to government counsel in dealing with client agencies. With respect to the latter situation, this case suggests that communication between the Office of the Attorney General of Illinois and IDOC needs to be reevaluated and improved.

revoked good-conduct credits and that he began his mandatory supervised release on October 3, 2012.

## II

### DISCUSSION

A case becomes moot when it no longer presents a case or controversy under Article III, Section 2 of the Constitution. "In general a case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (quoting *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980)) (internal quotation marks omitted); *see also Powell v. McCormack*, 395 U.S. 486, 496 (1969). In claiming that this case is moot, Mr. Curry takes the view that there will be no legally cognizable collateral consequences from the prior revocation and that the case does not fall within the exception for cases "capable of repetition, yet evading review." *Weinstein v. Bradford*, 423 U.S. 147, 148-49 (1975) (per curiam). Mr. Eichwedel takes the opposite view. He submits that his appeal is not moot because he suffered collateral consequences from the revocation of his good-conduct credits and because his case falls within the "capable-of-repetition-yet-evading-review" exception to the mootness doctrine. We shall examine each of these contentions in turn.

### A.

We first examine whether Mr. Eichwedel faces sufficient collateral consequences to avoid a finding of mootness. In *Spencer v. Kemna*, 523 U.S. 1, 7 (1998), the Supreme Court repeated the well-established principle that, with respect to a criminal conviction, once a convict's sentence ends, "some concrete and continuing injury other than the now-ended incarceration or parole--some 'collateral consequence' of the conviction--must exist" to justify the continued maintenance of the action. Mr. Eichwedel attempts to apply this principle to his habeas action for the loss of good-time credits. He contends that, if his good-conduct credits had not been revoked, he would have been eligible to apply for up to 90 days of meritorious good-time credits under 730 ILCS 5/3-6-3(a)(3). He urges that, had he been released 90 days earlier, he could have started his

supervised release at an earlier date and therefore would have completed his sentence sooner. In his view, remaining on supervised release for an additional three months constitutes a major restraint on his freedom and is the sort of serious collateral consequence that is sufficient to avoid mootness.

Mr. Curry disagrees. She contends that the alleged injury is too speculative. At best, Mr. Eichwedel would only have been *eligible* to receive up to 90 additional days of credit. The decision whether to grant that credit is within the "sole discretion" of the IDOC Director or his or her designee. 730 ILCS 5/3-6-3(a)(3). Mr. Curry further argues that, even if Mr. Eichwedel were entitled to (rather than just eligible for) good-conduct credit, he could not show that the injury would be redressable by a decision in his favor in this litigation.

Mr. Curry's position is persuasive. Although we presume that a criminal conviction has collateral consequences,[2] we do not indulge in the same presumption with respect to prison disciplinary proceedings. *Spencer*, 523 U.S. at 7-16 (declining to extend presumption of collateral consequences from convictions to revocations of parole and rejecting defendant's assertions of concrete injuries-in-fact as too speculative); *Cochran v. Buss*, 381 F.3d 637, 640-41 (7th Cir. 2004) (explaining that the presumption of collateral consequences has not been extended to prison disciplinary proceedings); *Diaz v. Duckworth*, 143 F.3d 345, 346 (7th Cir. 1998) (same). Indeed, after *Spencer*, it is unclear whether a prisoner may allege sufficient collateral consequences from a prison disciplinary action to avoid dismissal after physical custody has ended. *See Cochran*, 381 F.3d at 641.

Assuming for the sake of argument that such collateral consequences of a disciplinary proceeding can be shown, it is clear that, after *Spencer*, the burden is on Mr. Eichwedel to establish those consequences. He has not met this burden. The best that Mr. Eichwedel can do is to point to the *possibility* that he *might* have served a shorter period of incarceration before beginning his period of supervised release. All he can suggest is that prison authorities *might* have

---

[2] *Spencer v. Kemna*, 523 U.S. 1, 9-10 (1998); *Sibron v. New York*, 392 U.S. 40, 54-57 (1968); *Diaz v. Duckworth*, 143 F.3d 345, 346 (7th Cir. 1998).

seen fit to grant him a reduction in the days he had to serve.[3] Such a deficiency is not sufficient to establish a continuing controversy between Mr. Eichwedel and IDOC. *See Spencer*, 523 U.S. at 14-15 (fact that challenged parole revocation could be used to deny future parole is not sufficient collateral consequence to maintain standing where parole board is vested with "'almost unlimited discretion'" to grant or deny parole).[4] Moreover, even if Mr. Eichwedel had been guaranteed additional good-conduct credits, a ruling in his favor would not redress his injury. The fact remains that he is now released and the amount of time that he spent in prison cannot be undone.

**B.**

We now examine the well-established exception to the mootness doctrine for disputes capable of repetition yet evading review. *See Weinstein*, 423 U.S. at 148-49. This exception applies when "(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again." *Turner v. Rogers*, 131 S. Ct. 2507, 2515 (2011) (alterations in original) (quoting *Weinstein*, 423 U.S. at 149).

Mr. Eichwedel contends that he diligently pursued his litigation through state and federal court but was not able to get a ruling on the central question of the case from any court except the trial court before his release date. He argues, therefore, that his case is "too short to be fully litigated prior to its cessation or expiration." *Id.*

---

[3] Mr. Eichwedel does not suggest any other possible collateral consequences.

[4] *See also Phifer v. Clark*, 115 F.3d 496, 500 (7th Cir. 1997) ("possible discretionary actions that may or may not affect future parole decisions" are too "speculative"); *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995) ("The loss of the opportunity to earn good-time credits, which might lead to earlier parole, is a collateral consequence of [the petitioner's] custodial status. Yet, such speculative, collateral consequences of prison administrative decisions do not create constitutionally protected liberty interests.").

Mr. Eichwedel also contends that, because the question certified to the Supreme Court of Illinois is likely to impact many prisoners and because prisoners with short sentences are unlikely to be able to obtain review, the court should apply the capable-of-repetition-yet-evading-review exception. *See United States v. Laguna*, 693 F.3d 727, 730 (7th Cir. 2012) (applying the exception when prisoner was sentenced to eighteen months' imprisonment). He notes that we recognized that the central issue in this case will affect many prisoners when we said that "certification presents the optimal method of assuring respect for the decision of the state courts as to the elements of the offense and of assuring that an issue which will recur frequently in both state and federal courts within Illinois, but which might not reach appellate courts with the same frequency, is decided definitively." *Eichwedel*, 2012 WL 3711880, at *15. Mr. Eichwedel further points out that nearly forty percent of people sent to prison each month are there because of parole violations, so it is more than merely speculative that he could return to prison. Additionally, he has a history of diligently protecting his rights while in confinement, filing six federal cases from 1991 to 2009, and would be similarly diligent if returned to prison.

Mr. Curry argues that, although Mr. Eichwedel's lawsuit became moot before he could fully litigate his federal habeas appeal, there is nothing to suggest that this type of case "is *always* so short as to evade review." *Spencer*, 523 U.S. at 18 (emphasis added); *see also Hickman v. Missouri*, 144 F.3d 1141, 1143 (8th Cir. 1998) (stating that the "evading-review" prong focuses on "whether the [challenged] activity is *by its very nature short in duration*, so that it could not, or probably would not, be able to be adjudicated while fully alive") (alteration in original) (quoting *Clark v. Brewer*, 776 F.2d 226, 229 (8th Cir. 1985).

Mr. Curry further notes that Mr. Eichwedel cannot meet the second prong of the established inquiry for the invocation of this exception: whether there is a reasonable likelihood that the same complaining party will be subjected to the same action again. She submits that Mr. Eichwedel is unlikely to have good-conduct credits revoked again for filing a pleading that a court finds to be frivolous. Although Mr. Eichwedel could be reincarcerated if his parole were revoked, she asserts that the likelihood is too remote that, while incarcerated, he also would file another lawsuit against the State that a court would determine to be frivolous without making an express finding and that IDOC would revoke his good-conduct credits based on that finding.

In evaluating these arguments, we start with the Supreme Court's admonition that unilateral actions taken after a case is in litigation "designed to insulate a decision from review . . . must be viewed with a critical eye." *Knox v. Serv. Emps. Int'l Union, Local 1000*, 132 S. Ct. 2277, 2287 (2012). Here, where Mr. Curry has given us no reason unrelated to the litigation for IDOC's largess toward Mr. Eichwedel, this counsel must be taken to heart. Nevertheless, although we must scrutinize Mr. Curry's argument with great care and circumspection, we must apply, in the end, the established test for determining whether the case is truly moot.

We note at the outset that there is certainly merit to Mr. Eichwedel's contention that this situation will recur again and that, when it does, it well might evade review. In our earlier opinion, we stated our belief that, until the matter is settled by Illinois, the situation confronting Mr. Eichwedel will reoccur. We also believe that there is merit to the prediction that, for many inmates in Illinois who have sentences shorter than the one imposed on Mr. Eichwedel, it is likely that the prisoner's release date will occur before the claim is litigated fully.

We cannot agree, however, that there is a "reasonable expectation" that this situation will reoccur to Mr. Eichwedel. His submission to the contrary is based on several interdependent contingencies, each of which is entirely speculative in nature. For Mr. Eichwedel to find himself in the same situation he must: (1) violate the conditions of his supervisory release; (2) be reincarcerated as a result of that violation; (3) file a lawsuit in state or federal court; (4) have a pleading in his lawsuit be deemed "frivolous"; (5) have the ruling court fail to designate that it is employing the term "frivolous" in the manner defined by the Illinois statute; (6) be subject to a prison disciplinary proceeding as a result of the court's designation of his suit as frivolous; and (7) suffer the loss of good-time credits as a penalty. The possibility of such a situation occurring is, to put it mildly, speculative and therefore far from the "reasonable expectation" required by the prevailing test.

This situation is simply not the same as the one that recently confronted us in *Laguna* where we determined that there was a reasonable expectation that a defendant would be convicted again of willfully interfering with a final deportation order. In that case, it was clear that the defendant's refusal to comply with an order to obtain a passport from his country of origin was likely

to continue indefinitely as part of his efforts to avoid the execution of the removal order. *Laguna*, 693 F.3d at 730. There, the court had record evidence of the defendant's resolve. Mr. Eichwedel never has indicated a resolve to violate the conditions of his supervised release. Nor has he ever indicated an intent to file frivolous pleadings should he be returned to prison.[5] The series of possibilities hypothecated by Mr. Eichwedel hardly fulfills the "reasonable expectation" or "demonstrated probability" required by the Supreme Court to justify the invocation of this exception to the general mootness standard. *Murphy*, 455 U.S. at 482; *Weinstein*, 423 U.S. at 149.

In short, while the underlying situation indeed may occur again and may not be resolved before a prisoner's release date, the chance of this situation happening to Mr. Eichwedel is simply too speculative to constitute a continuing controversy between him and IDOC.

## Conclusion

Accordingly, the certification to the Supreme Court of Illinois is withdrawn. The court expresses its appreciation to the Justices of that court for their willingness to assist in the resolution of this case. The appeal is dismissed as moot. Each party will bear its own costs in this court.

IT IS SO ORDERED.

---

[5] Mr. Eichwedel makes no argument that 730 ILCS 5/3-6-3(d) is applicable to him while he is serving his supervised release term.